**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PAUL DUFFY, | ) | Case No. 1:13-cv-01569 |
| | ) | |
| | ) | Removed from: |
| Plaintiff, | ) | |
| | ) | The Circuit Court of Cook County, IL |
| v. | ) | Case No. 13-L-001656 |
| | ) | |
| PAUL GODFREAD, ALAN COOPER | ) | Honorable John W. Darrah |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO
THE MINNESOTA ANTI-SLAPP ACT, MINN. STAT. § 554.01, *et al*.**

**I. INTRODUCTION**

Defendants Paul Godfread and Alan Cooper (collectively, "Defendants"), by and through counsel, move to dismiss all counts of Plaintiff Paul Duffy's Complaint pursuant to the Minnesota Anti-SLAPP Act, Minn. Stat. § 554.01, et al.

Defendants had intended to file this Motion once the pending matter was consolidated with the duplicative action filed by Plaintiff's firm. *Prenda Law v. Paul Godfread, Alan Cooper & John Does 1-10*, No. 13-cv-00207 (S.D. Ill. 2013). However, given Plaintiff's antics in the Southern District, Defendants believe filing now provides the quickest resolution to this continued farce.

**II.    RELEVANT FACTS AND PROCEDURAL HISTORY**

Prenda Law, Inc. is a law firm whose attorneys, John Steele, Paul Duffy and Paul Hansmeier, have developed a lucrative practice monetizing copyright infringement allegations of pornographic films.

"Doing the math, I suggest Steele has made $15 million settling these suits."

"Maybe a little less. We don't track the amount we've recovered. More than a few million," [John Steele] says, declining to offer exact numbers."

Kashmir Hill**,** *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates'*, Forbes, October 15, 2012.[1] *See generally*, **Exhibit A** (Deposition of Paul Hansmeier).

The firm is an active player in this arena and has filed numerous lawsuits, in multiple forms, under multiple aliases. *See generally*, *Ingenuity 13, LLC v. John Doe*, No. 12-cv-8333-ODW, ECF Nos. 66 and 86 (C.D. Cal. 2012) (Orders to Appear). *See also*, **Exhibit G**, ¶¶ 23, 25, 42 (discussing plaintiff's forensic investigator), 60 ("Steele Hansmeier / Prenda Law / Anti-Piracy Law Group"), 69, 72, 73 & 97 ("Prenda Law is an infamous clique of lawyers who file hundreds of mass … lawsuits against peer-to-peer users who allegedly share copyrighted pornography movies."). *See also*, **Exhibit E,** ¶ 4 ("Prenda Law has at various times operated under the names 'Steele Hansmeier, PLLC' and 'Anti Piracy Law Group' …"). To date, Plaintiff has filed over 200 multiple defendant cases against more than 20,000 defendants. *See, AF Holdings, LLC v. Does 1-135,* No. 11-cv-03336, ECF No. 43-1 (N.D. Cal. Feb. 24, 2012).[2]

The fundamental element, however, has remained the same: pay a "settlement" to make the accusations go away, or face the embarrassment and expense required to prove your innocence.[3] *See, e.g.*, **Exhibit G**, ¶ 45 & 50. But Prenda Law has not brought any of its cases to trial. *See generally*, *Id.* ¶¶ 23 ("Plaintiff … seeks to settle as many claims as it can as early as possible in litigation."); 53 ("They don't want a full-out trial, only your money.") & 97 ("This outfit has no desire to progress their cases to the actual litigation …")

Beginning in 2011, Prenda began filing suits on behalf of several Nevis-St. Kitts entities, including AF Holdings, Ingenuity 13 and VPR. To further those goals, Prenda used the alter ego

---

[1] Available at: http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steelejustifies-his-pursuit-of-sometimes-innocent-porn-pirates/
[2] See also, *supra* at fn.1 ("[Steele] has filed over 350 of these suits, and says he is currently suing approximately 20,000 people.").
[3] Steve Schmadeke, *Chicago lawyer leads fight against porn pira*cy, Chicago Tribue (November 15, 2010), available at: http://articles.chicagotribune.com/2010-11-15/news/ct-met-porn-attorney-20101115_1_face-lawsuitanti-piracy-campaign-copyright-violators ("The legal technique of filing 'John Doe' lawsuits naming thousands of defendants from across the country has come under fire from privacy groups. They question what they call the heavy-handed tactic of going after BitTorrent users who typically lack an attorney, often live in a different state than where the lawsuit is filed and fear the embarrassment of being named in a court file as having downloaded pornography.").

'Alan Cooper' to conceal their ownership of the corporations and control over the settlement proceeds. *See*, **Exhibit B,** pp. 21-34 (March 11, 2013 Hearing Transcript). **Exhibit E**, ¶¶ 5-6, 17, 18-23, & 31-34.

### A. *Alan Cooper v. John Steele, et al.*

Defendant Alan Cooper ("Cooper") was a caretaker from 2006-2012 for property John Steele ("Steele") owned in Aitkin County, Minnesota. While visiting his property, Steele, on several occasions, discussed with Cooper his plans and early successes in carrying out a massive, nationwide copyright enforcement litigation strategy. It was during one of these conversations Steele told Cooper that if he was ever contacted regarding "any of my law firm[s] or anything that has to do with me, don't answer and call me." *Ingenuity 13,* ECF No. 93, p.23, lines 12-15 (attached as **Exhibit B**). Sometime thereafter, Cooper became aware that his name was being used as an officer of AF Holdings and Ingenuity 13—clients of Prenda Law.

In mid-November 2012, to clear his name, Cooper retained Defendant Atty. Paul Godfread ("Godfread") for purposes of confirming that it was a different Alan Cooper who was the CEO of AF Holdings and Ingenuity13, and not him. What followed was two months of evasive and uncooperative behavior on the Plaintiffs' part. *See*, **Exhibit C** (email correspondence); *Ingenuity 13,* ECF No. 48, p.9 (attached as **Exhibit D**). In the end, Cooper was left with no choice but to file suit to resolve the issue. *Alan Cooper v. John Steele, et al.*, No. 27-cv-13-3463 (4th Dist., Hennepin Cty., MN) (Jan. 25, 2013) (attached as **Exhibit E**).

Defendants, and the courts, have given Plaintiff every opportunity to address the merits of the claims Defendants raise. They have not. And when pressed to do so, have invoked the Fifth Amendment. *Ingenuity 13,* ECF No. 103 (attached as **Exhibit F**). It is well-established that adverse inferences from assertion of the privilege are allowed in civil cases against the party-witness who invoked it.[4] *Laborers' Pension Fund v. Surface Dimensions, Inc.*, No. 07-cv-3860, 2011 U.S. Dist. LEXIS 23229, *25-26 (N.D. Ill. Mar. 8, 2011).

---

[4] Here, of course, Prenda is a corporation. However, Paul Duffy was its testimonial, and it must suffer the consequences of the witness's conduct. *Id.,* at 27.

> "By asserting their right to remain silent, [Prenda's principals] forfeit[] their ability to submit favorable testimony rebutting [Defendants' claims].

*Id.* at 19.

> "The individual's status as a party or non-party to the litigation is immaterial. All that matters is whether the individual faces the remote chance of prosecution based on answers to questions "designed to elicit information about the existence of sources of potentially incriminating evidence." *United States v. Hubell*, 530 U.S. 27, 43 (2000)."

*Id.* at 20.

**B. Plaintiff's Retaliatory Actions.**

Steele was served with the Defendants' complaint on January 25, 2013.[5] Eighteen days later—and before Plaintiff ever answered Defendants' complaint—Plaintiff filed the first of its retaliatory state court defamation claims.

Plaintiff, Paul Duffy, an Illinois citizen residing in Chicago, Illinois and "sole principal" of Prenda Law, filed his Complaint in Cook County on February 15, 2013. *Paul Duffy v. Paul Godfread, Alan Cooper & John Does 1-10*, No. 13-L-001656, (Cir. Court, Cook Cty., Ill.) ("Prenda Law LLC, of which Plaintiff is the sole officer and employee … statements regarding Prenda are also, by definition, directed at Plaintiff."). Defendants removed this action to the Northern District of Illinois on Feb. 28, 2013, No. 13-cv-1569. *See*, **Exhibit G**, ¶ 1.

February 13, 2013 email from Godfread to Steele:

> **"**But as to the other supposed lawsuits that you alluded to on the phone, I don't have any idea what you are talking about, because you wouldn't tell me the basis of your claims. If the claims are based upon my client bringing suit against you, those suits would almost certainly be frivolous. Please don't play games, Mr. Steele. If you think that you or your clients have sincere causes of action, you could at least tell me what they are in general terms."

February 14, 2013 email from Steele to Godfread:

> "Since you will not waive service, you will be finding out what the causes of action are when you are served with the various complaints. I am not your attorney and do

---

[5] A civil action in Minnesota is commenced by service of the summons upon the defendant. *Walker v. Thielen Motors, Inc.*, 916 F.2d 450, 451 (8th Cir. 1990) *See also*, Minn. R. Civ. P. 3.01; *Concordia College Corp. v. W.R. Grace Co.*, 999 F.2d 326, 330 (8th Cir. 1993); *Doerr v. Warner*, 76 N.W.2d 505, 511 (1956).

not have an obligation to explain to you the various lawsuits you are now involved in. In fact, I have no involvement with several of them."[6]

**Exhibit H.**

Prenda Law, Inc., Plaintiff's law firm, is an Illinois corporation. The firm filed its Complaint on February 12, 2013. The action bears the same title and state court case number as noted above and is docketed in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois. Defendants removed this action to the Southern District of Illinois on March 1, 2013, No. 13-cv-00207. *See*, **Exhibit I.**

February 15, 2013 email from Steele to Godfread:

> "It is my understanding that several other people have either recently sued you, or are in the process of serving you. As I explained to you earlier this week, my personal suit against you should be filed in Florida early next week. Despite the intensity of the litigation that is starting, I want to assure you that out of professional courtesy I will do everything I can to accommodate the various court hearings you will be involved in."

February 21, 2013: Steele answers the Minnesota complaint.

February 21, 2013 email from Paul Hansmeier to Godfread:

> "My firm has been retained by Livewire Holdings LLC to pursue claims in the U.S. District Court for the District of Minnesota against you and your co-conspirators arising from defamation, civil conspiracy and related acts."

February 22, 2013 email from Steele to Godfread:

> "As you know, Mr. Cooper has been served in two separate Illinois suits with additional suits currently being filed."

**Exhibit H.**

John Steele filed his Complaint on February 25, 2013 in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, Florida. *John Steele v. Paul Godfread, Alan Cooper & John Does 1-10*, No.13-6680 CA 4, (11th Cir., Miami-Dade Cty., Fla.). Defendants removed this action to

---

[6] Despite Steele's contention he's not involved with the other actions, the majority of communications regarding the suits and settlements are from him. *See also*, **Exhibit B**, p. 19 lines 15-19. ("THE COURT: You know what was really interesting, a lawsuit handled by law firm A, the settlement funds then are transmitted to law firm B's trust account, law firm B being controlled by Mr. Steele. I don't know. I just find these things curious.").

the Southern District of Florida on March 1, 2013, No. 13-cv-20744. Plaintiff Steele voluntarily dismissed this action March 6, 2013.[7] *See*, **Exhibit J**.

February 27, 2013 voicemail from Steele to Cooper:

> "Alan, this is John Steele again. You have not responded or contacted me regarding litigation you're involved in. I know you've been served with a third lawsuit. *And there are more coming.* Don't worry about that. Well, obviously, if I don't hear from you, I'm going to start filing for certain default motions and start getting relief that way. I can assure you that just ignoring legal matters, it's not going to go away. I can guarantee you, I'm not going away. *So I highly recommend you, at least, you know, follow the rules of Minnesota, Illinois, Florida and some other states' soon* civil procedure because, otherwise, your life is going to get really complicated. And I'm saying this as a friend, as well as opposing counsel. So you can reach me if you'd like to discuss setting up a deposition and various other discoveries, and, of course, any settlement discussions you'd like to do. All right. You have the number. Bye."

*Ingenuity 13,* ECF No. 79-1, pp. 6-7 (emphases added) (attached as **Exhibit K**).

### III. LEGAL STANDARD

**A. Standard of Review for Motion to Dismiss Pursuant to the Minnesota Anti-SLAPP Statute**.

Minnesota's anti-SLAPP statute, Minn. Stat. § 554.01-.05, was designed to prohibit lawsuits against parties engaged in public participation seeking favorable government action. Specifically, pursuant to Minn. Stat. § 554.03, "lawful conduct or speech that is genuinely aimed in whole or in part at procuring government action is immune from liability, unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn. Stat. § 554.03.

"A party may move 'to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation.'" *Nexus v. Swift*, 785 N.W.2d 771, 780 (Minn. Ct. App. 2010) (quoting Minn. Stat. § 554.02(1)). "The defendant bears a 'minimal burden' of making a threshold showing that the plaintiff's underlying claim materially relates to an act of the defendant's that involved public participation." *Id.* at 782 (citing *Middle-Snake-Tamarac Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 841 (Minn. 2010). "Once the defendant has made this threshold showing and the district court has made its preliminary determination that the anti-SLAPP

---

[7] Steele's complaint claims he is a resident of Florida. ¶¶ 5, 13. Yet, two months prior, when defending a sanctions action against him in Florida, Steele claimed to be a resident of Nevada. *Sunlust, LLC v. Nguyen*, No. 12-cv-01685-MAP, ECF No. 40-5 (M.D. Fla. Dec. 20, 2012) (Affidavit of John Steele). See also, *id.*, ECF No. 28 (M.D. Fla. Nov. 30, 2012) (Transcript of Motion Hearing).

statute is properly invoked, the burden then shifts to the plaintiff …" *Id.* "The district court must grant the motion to dismiss unless the responding party shows by clear and convincing evidence that the acts of the moving party are not immunized from liability." *Id.* at 780 (citing Minn. Stat. § 554.02, subd. 2(3)). The only basis upon which the plaintiff may survive the motion to dismiss and avoid a defendant's statutory immunity is clear and convincing evidence that the moving party's conduct constitutes a tort or a violation of a constitutional right. Minn. Stat. § 554.02, subd. 2(2) & (3); Minn. Stat. § 554.03.

"Clear and convincing evidence 'requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt.' … This standard is met when the matter sought to be proved is 'highly probable.'" *Nexus*, 785 N.W.2d at 780 (citations omitted). Thus, on a motion to dismiss under the Minnesota anti-SLAPP statute, Plaintiff bears "a heightened burden of showing that [Defendant]'s statements were highly probably defamatory." *Id.* "The Minnesota Supreme Court has described this standard as a heavy burden." *Hoyt v. Goodman*, Civ. No. 10-cv-3680, 2011 U.S. Dist. LEXIS 142508, *14 (D. Minn. Dec. 12, 2011), citing *Stengrim*, 784 N.W.2d at 839.

"[A] motion to dismiss for failure to state a claim that asserts immunity under the [Minnesota] anti-SLAPP statute remains based on the judgment-on-the-pleadings standard." *Nexus v. Swift*, 785 N.W.2d 771, 781 (Minn. Ct. App. 2010), citing *Marchant Inv. & Mgmt. Co., Inc. v. St. Anthony West Neighborhood Org., Inc.*, 694 N.W.2d 92, 95 (Minn. 2005). That standard operates "[i]n conjunction with the statutory clear-and-convincing standard." *Id.* The question for the Court "is not whether [Plaintiff] will ultimately prove defamation; the question is whether [Plaintiff] produced clear and convincing evidence of defamation *in light of the Rule 12 standard for granting judgment on the pleadings.*" *Id.* (emphasis in original).

> A motion for judgment on the pleadings brought pursuant to Rule 12(c) may be brought "after the pleadings are closed - but early enough not to delay trial...." Fed. R. Civ. P. 12(c). "As the Eighth Circuit held in *Westcott*, because motions to dismiss for failure to state a claim are subject to the same legal standard whether brought under Rule 12(b)(6) or Rule 12(c), the distinction is "purely formal...."

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, 871 F. Supp. 2d 843, 850 (D. Minn. 2012) (quoting *Ali v. Frazier*. 575 F. Supp.2d 1084, 1089 (D. Minn. 2008) (citing *Westcott*

7

*v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990))). Likewise, in the Seventh Circuit, "a [Rule] 12(b)(6) motion filed after an answer has been filed is to be treated as a [Rule] 12(c) motion for judgment on the pleadings and can be evaluated under the same standard as a Rule 12(b)(6) motion." *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 756 n.1 (7th Cir. 2006), citing *Lanigan v. Vill. of Hazel Crest, Illinois*, 110 F.3d 467, 470 n.2 (7th Cir. 1997).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted. "When ruling on a motion to dismiss under Rule 12(b)(6), [the Court] accept[s] all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of" the plaintiff. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). However, the Court must grant the motion where the factual allegations fail to "raise a right of relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To survive a Rule 12(b)(6) motion, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (*quoting Papasain* at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint must be dismissed if the allegations do not state a plausible claim." *Estate of Miller v. Tobiasz*, 630 F.3d 984, 988 (7th Cir. 2012) (citing *Twombly* and *Iqbal*). "In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 689 (7th Cir. 2008) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006)). "A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail." *Robbins v. Lading*, 10-cv-605-WDS, 2012 U.S. Dist. LEXIS 97941, *2 (S.D. Ill. July 16, 2012).

**B. Choice of Law.**

A district court sitting in diversity applies the choice-of-law rules of the state in which the court sits. *Malone v. Corr. Corp. of Am.,* 553 F.3d 540, 543 (7th Cir. 2009). In Illinois, courts use the "most significant contacts" test in resolving conflicts of law. *Auto-Owners Ins. Co. v. Websolv*

*Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009). In the tort context, "'the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.'" *Tanner v. Jupiter Realty Corp.,* 433 F.3d 913, 916 (7th Cir. 2006) (quoting *Esser v. McIntyre,* 169 Ill. 2d 292, 298 (1996)).

In assessing which state has the strongest relationship with the occurrence and the parties, the Court looks to four factors: "'1) where the injury occurred; 2) where the injury-causing conduct occurred; 3) the domicile of the parties; and 4) where the relationship of the parties is centered.'" *Id.* The Court does not merely count contacts but rather weighs them in light of the general principles outlined in the Restatement (Second) of Conflict of Laws § 6, which are the relevant policies of the forum; the relevant policies of the interested states; and those states' relevant interests in determining the particular issue; and the basic policies underlying the particular field of law. See, *Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 169-70 (2007).

Illinois also follows the doctrine of *dépeçage*, "which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Townsend,* 227 Ill. 2d at 161. In determining what law applies to a plaintiff's claims or defendant's defenses, the Court will give each issue "'separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 145, cmt. d, at 417 (1971)); *Global Relief Found. v. New York Times Co.*, No. 01-cv-8821, 2002 U.S. Dist. LEXIS 17081, *30-34 (N.D. Ill. Sept. 9, 2002) (applying Illinois choice of law to find that Illinois law applied to defamation action, but that defenses to defamation, namely anti-SLAPP, should be considered under California law); *Northwest Airlines v. Astraen Aviation Services. Inc.* 111 F.3d 1386 (8th Cir. 1997) (finding that Texas law applied to defamation action, but that defenses to defamation, namely anti-SLAPP, should be considered under Minnesota law). See also, *Doctor's Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 U.S. Dist. LEXIS 134921, *8-10 (N.D. Ill. Nov. 22, 2011); *Chi v. Loyola University Medical Center*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011).

IV. ARGUMENT

A.  Defendants' Motion to Dismiss is Governed by Minnesota's Anti-SLAPP Statute.

To determine which state's substantive law governs, Illinois courts begin by applying Illinois' choice of law principles. *Malone v. Corr. Corp. of Am.,* 553 F.3d 540, 543 (7th Cir. 2009). In Illinois, choice of law principles are brought to bear where the choice of one state's laws over another creates an actual conflict. "Conflicts rules are appealed to only when a difference in law will make a difference to the outcome." *Int'l Adm'rs, Inc. v. Life Ins. Co.*, 753 F. 2d 1373, 1376 (7th Cir. 1985).

The conflicting laws in both Illinois and Minnesota concerning both defamation and anti-SLAPP require a conflicts analysis. "Minnesota law has generally required that in defamation suits, the defamatory matter be set out verbatim." *Russo v. NCS Pearson, Inc.*, 462 F. Sup. 2d 981, 1001 (D. Minn. 2006), quoting *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000). But under Illinois law, to satisfy Rule 8, "the plaintiff need not recite the allegedly defamatory statement verbatim." *Nieman v. Nationwide Mut. Ins. Co.*, 706 F.Supp.2d 897, 911 (C.D. Ill. 2010), citing *Robinson v. Morgan Stanley*, No. 06-cv-5158, 2007 U.S. Dist. LEXIS 70604, *20 (N.D. Ill. Sept. 24, 2007).

Even if the states had identical defamation laws, the Court would need to settle the choice of anti-SLAPP law issue. In determining which state's anti-SLAPP law applies, "[t]he issue of whether a statement is defamatory … is distinct from the issue of whether that statement is privileged." *Chi v. Loyola University Med. Ctr.*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011) (internal quotation omitted); *see also Doctor's Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 U.S. Dist. LEXIS 134921, *8-9 (N.D. Ill. Nov. 22, 2011).

The states' anti-SLAPP laws differ materially. Unlike the Illinois statute, Minnesota's anti-SLAPP statute provides for a "SLAPP-back" suit against the plaintiff, allowing Defendants to state a counterclaim to recover damages for the plaintiff's abuse of the legal process. Minn. Stat. § 554.045. (The only other states that provide for such anti-SLAPP counterclaims are California, Delaware, Hawaii, Nevada, New York, Rhode Island and Utah.) Thus, the counterclaim stated by Defendants

10

would not be available under the Illinois statute. Other differences also highlight the broader protections Minnesota provides for its speakers engaged in public participation. The Illinois anti-SLAPP act "subject[s] only meritless, retaliatory SLAPP suits to dismissal." *Sandholm v. Kuecker*, 962 N.E.2d 418, 430 (Ill. 2012); *accord Chicago Reg'l Council of Carpenters v. Jurisch*, No. 1-11-3279, ¶¶ 16-20 (Ill. App. Ct. 2013). The Minnesota statute applies more broadly, allowing relief even when the moving party does not demonstrate "that the respondent brought the cause of action in the underlying lawsuit for the purpose of harassment, to inhibit the moving party's public participation, to interfere with the moving party's exercise of protected constitutional rights, or otherwise wrongfully injure the moving party." Minn. Stat. § 554.04(2)(b). *Compare id.* § 554.02(2)(a) allowing for attorney's fees without such a showing). Moreover, the states offer different remedies to SLAPP targets. Prevailing movants under Illinois' anti-SLAPP statute are provided only an award of "reasonable attorney's fees and costs incurred in connection with the motion." 735 ILCS 110/25. Minnesota's more protective anti-SLAPP law requires courts to award actual damages when the moving party shows injury, and further allows for punitive damages. Minn. Stat. § 554.02(2)(b). These material differences require the Court to determine which state's laws should apply.

Illinois courts use the "most significant contacts" test in resolving conflicts of law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In the tort context, "'the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.'" *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (quoting *Esser v. McIntyre,* 169 Ill.2d 292, 298 (1996)). For the reasons given herein, this Court must apply Minnesota's substantive law to this motion.

"It used to be a flat rule (called *lex loci delicti*—the law of the place of the wrong) that the law applicable in a tort case is the law of the place where the tort occurred." *Kamelgard v. Macura*, 585 F.3d 334, 340 (7th Cir. 2009) (citations omitted). "The rule has been reduced, in effect, to a presumption, in Illinois as in other states." *Id.* at 341 (citations omitted). Illinois now instead applies "the law of the state that has the 'most significant relationship' to the claim ... rather than the *lex loci delicti.*" *Id.* (citations omitted). "Defamation … is a tort that the old rule, now a presumption, very

11

often doesn't fit, because often the defamatory statement is communicated in more than one state." *Id.* "When the defamatory statement is communicated in many different states," the usual result in Illinois is "to apply the law of the plaintiff's domicile." *Id.* (citations omitted). But, while "in a defamation case, 'the state of the most significant relationship will usually be the state where the [plaintiff] was domiciled at the time … if the matter complained of was published in that state.'" *Id.* at 342 (quoting Restatement (Second) of Conflict of Laws § 150(2)). "In any case, where the conduct in issue is publication, the place of publication … is under most circumstances the place of injury." *Int'l Adm'rs, Inc. v. Life Ins. Co.*, 753 F.2d 1373, 1376 (7th Cir. 1985), citing *Ginsburg v. Black*, 192 F.2d 823 (7th Cir. 1951).

The Complaint contains no factual allegation that Godfread or Cooper made any defamatory statement outside of a complaint Godfread filed in Minnesota District Court on Cooper's behalf. As a result, the presumption that Illinois law applies, rather than Minnesota law, is not apt. Rather, in determining which state has the "most significant relationship" to the case, "[f]our factors are supposed to guide the court's decision: (1) where the injury occurred; (2) where the injury-causing conduct occurred; 3) the domicile of the parties; and (4) where the relationship of the parties is centered.'" *Tanner v. Jupiter Realty Corp.,* 433 F.3d at 916 (quoting *Esser v. McIntyre,* 169 Ill.2d 292, 298 (1996)).

Plaintiff alleges that a tort was committed by Godfread and Cooper in Minnesota, where they are domiciled. Though Plaintiff may claim to have felt the effects of the injury in Illinois, where it is domiciled, Plaintiff cannot "adequately explain why Illinois would have a significant interest in having its [anti-SLAPP] law applied to *non*-Illinois speakers." *Doctor's Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 U.S. Dist. LEXIS 134921, *10 (N.D. Ill. Nov. 22, 2011). "In contrast, [Minnesota] has a significant interest in determining how much protection to give [Minnesota] speakers." *Id.* at *11 (citations omitted).

In addition, Plaintiff also contends that Alpha Law Firm of Minnesota has felt effects of the injury in Minnesota.[8] Allegations of injury caused in Minnesota and felt in both Illinois and Minnesota neutralize the weight of any factors favoring application of Illinois law, and tips the scale toward Minnesota. Moreover, the relationship between the parties is centered in Minnesota, around the property for which Cooper served as caretaker for Steele.

Further, while "the place of injury is a central factor in determining which state's law governs ... this factor is less important in the anti-SLAPP context." *Doctor's Data, Inc. v. Barrett*, No. 10-cv-03795, 2011 U.S. Dist. LEXIS 134921, *9-10 (N.D. Ill. Nov. 22, 2011), citing *Chi v. Loyola University Med. Ctr.*, 787 F.Supp.2d 797, 803 (N.D. Ill. 2011).

> The purpose behind an anti-SLAPP law is to encourage the exercise of free speech—indeed, Illinois's stated policy in enacting the ICPA was to "encourage [ ] and safeguard[ ] with great diligence" the "constitutional rights of citizens and organizations to be involved and participate freely in the process of government." 735 ILCS 110/5. In light of this policy goal, the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue. A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders.

*Chi v. Loyola University Med. Ctr.*, 787 F. Supp. 2d at 803.

The same purposes animate the Minnesota anti-SLAPP law, and Minnesota's strong interest in protecting the speech of its own citizens engaged in public participation is paramount. The Minnesota statute was enacted "[t]o protect citizens and organizations from lawsuits that would chill their right to publicly participate in government." *Marchant*, 694 N.W.2d 94-95 (Minn. Ct. App. 2005); *Hoyt v. Goodman*, Civ. No. 10-cv-3680, 2011 U.S. Dist. LEXIS 142508, *13 (D. Minn. Dec. 12, 2011). Minnesota's interest in the issues being litigated is heightened because the alleged wrongful statements were made in a Minnesota state court, and applying another state court's laws could impinge on Minnesota's sovereignty. Further, Plaintiff threatened (but did not pursue) to bring a defamation claim against Cooper and Godfread in Minnesota. *See,* **Exhibit H.** This raises the specter of forum shopping, which Minnesota, like all states, has an interest in preventing. *See*

---

[8] As noted in Defendants' opposition to Plaintiff's motion to remand, Plaintiff's attempt to defeat diversity by amending its complaint to add Alpha Law Firm as a party was not served timely.

*generally Northwest Airlines v. Astraea Aviation Servs.*, 111 F.3d 1386, 1394 (8th Cir. 1997). To prevent the risk of forum shopping, and in recognition of Minnesota's interest in governing speech acts and public participation in Minnesota, the Court must apply the Minnesota anti-SLAPP statute to this motion.

**B. Minnesota's Anti-SLAPP Statute Provides Total Immunity from Plaintiff's Claims.**

Minnesota's anti-SLAPP statute was enacted to "protect citizens and organizations from civil lawsuits for exercising their rights of public participation in government." *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 838 (Minn. 2010). The immunity derived from this statute "applies to any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involved public participation." Minn. Stat. § 554.02(1)(3); *Stengrim*, at 841. Here, Defendants need only make a threshold showing that the underlying "claim materially relates to an act of the moving party that involves public participation." *See, id.* at § 554.02(1). Once the threshold showing is satisfied, the burden shifts to Plaintiff to show by clear and convincing evidence that Defendants' complaint was not immune from liability. *See, Stengrim*, at 839; *Nexus*, at 783.

Defendants contend, and Plaintiff cannot properly dispute, that Defendants were targeted in the multiple state proceedings, including this one, because they filed the underlying Minnesota complaint. A review of Plaintiff's complaint confirms this fact. The only instance of alleged defamation directly attributable to Defendants arise from the "allegations in a complaint filed in the District Court for the Fourth Judicial District of Minnesota that are patently false." **Exhibit G**, ¶ 6. Even if true, Plaintiff never identifies which of the allegedly defamatory comments in its exhibits are attributable to Godfread, Cooper or their complaint.[9]

Plaintiff argues it is possible that the Defendants posted the alleged defamatory comments online by inventing a fictitious name in order to post the comment anonymously. **Exhibit G**, ¶ 30. However, this allegation amounts to nothing more than "sheer speculation." *Hadley v. GateHouse Media Freeport Holdings, Inc.*, No. 12-cv-1548, 2012 U.S. Dist. LEXIS 98674, *6-7 (N.D. Ill. 2012)

---

[9] The comments go back as far as June 4, 2012—five months before Cooper and Godfread even met.

14

(citing *Universal Comm. Sys. v. Lycos, Inc.,* 478 F.3d 413, 425 ("Any suggestion that [defendant] may have done more specifically to encourage the postings at issue is sheer speculation.")). "These conclusory, vague allegations fail to put Defendants on notice as to the charges against them, and do not give rise plausible claims for relief because the Court cannot reasonably infer that Defendants are liable for 'the misconduct alleged,' let along identify what, specifically, the alleged misconduct was." *Nieman v. Nationwide Mut. Ins. Co.*, 706 F.Supp.2d 897, 911 (C.D. Ill. 2010) (plaintiff's speculation that defendants made defamatory communications did not satisfy Rule 8) (citing *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

> "Allowing plaintiff to amend the complaint to include allegations that defendant invented the user "Fuboy" would not change the outcome of the motion. Such allegations are purely speculative and would fail to meet the plausibility standard outlined in *Twombly*. Because "plaintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have," *McCloskey v. Mueller,* 446 F.3d 262, 271 (1st Cir. 2006), plaintiff cannot be granted leave to amend the complaint."

*Hadley,* at *6-7 (N.D. Ill. 2012).

The paucity of substantive factual allegations in the Complaint against Cooper and Godfread betrays Plaintiff's ulterior motives. When Plaintiff filed its duplicative state court actions, its goal was not to win on the merits but rather 1) to force Defendants to expend funds on litigation costs and attorney fees in multiple state court proceedings; 2) to discourage opposition in Defendants' Minnesota action through delay, expense, and distraction; and 3) for spite.

Before answering the allegations raised in Defendants' complaint, Plaintiff had already chosen to file duplicative suits on behalf of its principals in several states.

Defendants' complaint, on its face, demonstrates that it was "genuinely aimed ... at procuring favorable government action" and therefore falls within the protection of anti-SLAPP. Minn. Stat. § 554.02(6); *see Freeman v. Swift*, 776 N.W.2d 485, 490 (Minn. Ct. App. 2009) (discussing statutory definitions of "genuinely," "aimed" and "procuring," and concluding that "the statute is unambiguous and can be construed based solely on the plain language used in the statute"). "The [Minnesota] anti-SLAPP statute protects citizens' public participation in government." *Id.* at 488. It "applies to any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the

15

claim materially relates to an act of the moving party that involves public participation." *Id.*, *quoting* Minn. Stat. § 554.02(1). "A district court must grant a motion to dismiss an action under this section 'unless the court finds that the responding party … has produced clear and convincing evidence that the acts of the moving party are not immunized from liability under section 554.03.'" *Id.* at 488-89, *quoting* Minn. Stat. § 554.02(3). Plaintiffs have "the burden of proof, of going forward with the evidence, and of persuasion on the motion." Minn. Stat. § 554.02(2). "The participation-in-government immunity provided under [the anti-SLAPP statute] explicitly requires the nonmoving party to disprove the movant's immunity by clearly and convincingly establishing an underlying tort." *Marchant Inv. & Mgmt. Co., Inc. v. St. Anthony West Neighborhood Org., Inc.*, 694 N.W.2d 92, 97 (Minn. 2005). Plaintiffs cannot meet "this high, statutorily imposed burden." *Id.*, *citing Swanlund v. Shiano Indus. Corp.*, 459 N.W.2d 151, 154 (Minn. App. 1990) (clear and convincing standard requires court to view evidence "through the prism of the substantive evidentiary burden").

Given the timing of Plaintiff's complaint and the speed with which it was filed, the high damages demand, and the duplicative nature of the action, Defendants have shown evidence of retaliatory intent. "[R]etaliatory intent may be inferred when a claim lacking merit is filed shortly after the exercise of protected rights." *Hytel Group, Inc. v. Butler*, 405 Ill. App.3d 113, 126 (2012). In analyzing a claim for retaliatory intent, it is appropriate for a court to consider the proximity in time between the protected activity and the filing of the complaint, and whether the damages requested are reasonably related to the facts alleged and are a "good-faith estimate of the extent of the injury sustained."). *Id. See also, Ryan v. Fox Television Stations, Inc.*, Nos. 1-12-0005, 1-12-0007 cons., (Ill. App. 2nd Div. October 23, 2012). Further evidence of Plaintiff's vindictiveness can be taken from their continued prosecution of its claims against the Defendants.

**C. Plaintiffs' Remaining Claims are Barred by Minnesota's Anti-SLAPP Statute.**

It is a general principal that one particular set of operative facts may create more than one cause of action. Defamatory statements may in themselves give rise to a cause of action for libel or slander and, at the same time, become the means by which other torts are committed. *Exciting World of Fashion v. Dun & Bradstreet*, 16 Ill. App.3d 709, 714 (1973).

Plaintiffs' claims of false light, interference with contractual relationships, interference with prospective economic advantage and civil conspiracy are all pendant upon its defamation claims since the means allegedly used to interfere was defamation. *Mittleman v. Witous*, 135 Ill.2d 220, 251 (1989) ("The defamation and tortious interference counts are analytically intertwined in our view.").

> "The defamation which is the means used to interfere with his business relationships action is the same defamation that [plaintiff] seeks to recover damages for under his defamation claim. It seems to us that, regardless of what the suit is labeled, the thing done to cause any damage to [plaintiff] eventually stems from and grew out of the defamation. Business interests may be impaired by false statements about the plaintiff which, because they adversely affect his reputation in the community, induce third persons not to enter into business relationships with him. We feel this phase of the matter has crystallized into the law of defamation and is governed by the special rules which have developed in that field. Defamation provides a much broader scope of recovery than wrongful interference with business relationships. Under present defamation law, a victim of defamation may recover, under proper circumstances, general damages; special damages, including among others, loss of business relationships; and possibly punitive damages."

*Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975). *See also, Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 310 (Minn. 2007) ("Regardless of the label, [Plaintiff's] claims are in essence defamation claims; they are claims that arise as a consequence of [Defendants'] purported defamatory statements.").

## V. CONCLUSION

Plaintiff's defamation claims ring as hollow as its principals' collective heads and should be dismissed. None of Defendants' actions as alleged in Plaintiffs' Complaint compromise a tort. Nor can Plaintiff reach the clear and convincing standard required by Minn. Stat. § 554 regarding its allegations of tortuous (or as Plaintiff would have it, "tortioius") conduct.

Plaintiff's claims should be dismissed and attorney fees and costs awarded pursuant to Minn. Stat § 554. For the foregoing reasons, Defendants respectfully request:

1) Dismissal of Plaintiff's claims in their entirety;

2) Judgment in favor of the Defendants ordering Plaintiff to reimburse Defendants for all reasonable attorney fees and costs incurred in defending against Plaintiff's claims pursuant to Minn. Stat. § 554.04(1); and

3) Judgment in favor of the Defendants awarding actual and/or punitive damages pursuant to Minn. Stat. § 554.04(2)(a-b).

>Respectfully submitted,
>
>/s/ Erin K. Russell
>The Russell Firm
>233 South Wacker Drive, 84th Floor
>Chicago, IL 60607
>T: (312) 994-2424
>F: (312) 706-9766
>erin@russellfirmchicago.com
>ARDC # 6287255
>Counsel for Defendants Paul Godfread and Alan Cooper
>
>/s/ Jason E. Sweet
>Booth Sweet, LLP
>32R Essex Street
>Cambridge, MA 02139
>T: (617) 250-8619
>F: (617) 250-8883
>jsweet@boothsweet.com
>BBO # 668596
>Counsel for Defendants Paul Godfread and Alan Cooper

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 17, 2013, she caused the foregoing to be filed with the Court via its CM/ECF electronic filing system, thereby serving a copy on all parties of record.

>/s/ Erin K. Russell