# EXHIBIT I

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS
## LAW DIVISION

PRENDA LAW, INC.                    )
                                    )
      Plaintiff,                )    No. 13-L- 75
                                    )
    v.                            )
                                    )
PAUL GODFREAD, ALAN COOPER          )
and JOHN DOES 1-10,                 )
                                    )
      Defendants.               )

FILED
ST. CLAIR COUNTY
FEB 12 2013
CIRCUIT CLERK
41

### AFFIDAVIT

This Affidavit is made pursuant to Supreme Court Rule 222(b).  Under the penalties of perjury as provided by Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the money damages sought by the Plaintiff herein does exceed Fifty Thousand ($50,000) Dollars.

BECKER, PAULSON, HOERNER & THOMPSON, P.C.

BY: _____
          KEVIN T. HOERNER, #6196686
          5111 West Main Street
          Belleville, Illinois 62226
          (618) 235-0020
          (618) 235-8558 Facsimile
          ATTORNEYS FOR THE PLAINTIFF

Subscribed and sworn to before me on this 12th day of February, 2013.

OFFICIAL SEAL
SHARON L. TAYLOR
Notary Public - State of Illinois
My Commission Expires Mar 03, 2015

_____
Notary Public

Page 1 of 1

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS
## LAW DIVISION

PRENDA LAW, INC.                     )
               Plaintiff,        )    No. 13-L- 7 5
       v.                             )
                                         )
PAUL GODFREAD, ALAN COOPER           )
and JOHN DOES 1-10,                  )
                                         )
               Defendants.       )
                                         )

```
          FILED
     ST. CLAIR COUNTY

       FEB 1 2 2013

            Nickolah A. Clay
          CIRCUIT CLERK
34
```

## COMPLAINT

Plaintiff, Prenda Law, Inc., through its undersigned counsel, hereby files this Complaint requesting damages and other relief, and alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff files this action seeking monetary damages, injunctive relief and other damages arising from the egregious Internet-based conduct of a number of individuals, whom Plaintiff knows only by the anonymous, salacious, false and libelous comments they have made, and continue to make, about it on the Internet. Shielded by unconventional pseudonyms, the two named Defendants and the Doe Defendants belong to a community of Internet "commentators," fearful of being identified, and have falsely accused Plaintiff of, among other things, criminal offenses; want of integrity in the discharge of employment; lack of ability in its profession; and the commission of fornication and adultery.

2.     The Defendants' defamatory statements are made under the most cowardly of circumstances: plastered over centralized Internet communities and available to anyone in the world with an Internet connection. The Defendants have libeled Plaintiff under the disguise of such childish and unsophisticated pseudonyms as "die troll die." Sheltered in a cloak of cowardly

1

pseudonyms, Defendants have continued unabated in their conduct, falsely accusing Plaintiff of many things with the stated intention of harming its business, harming its relationships with clients, and harming the public reputation of anyone performing work on behalf of Plaintiff.

3.     Defendants have published copious volumes of such false statements to many third parties, theoretically extending to every person on Earth through the Internet. Their false statements constitute libel *per se,* and are actionable without proof of special damages. Their conduct also makes them liable to Plaintiff on several theories of tort liability, including false lights and intentional interference with actual and prospective business relationships, as well as conspiracy to commit those torts.

4.     Plaintiff brings this action to force Defendants out of their hiding places, to expose the "writers" to the light of day, to enjoin their continued tortious conduct against Plaintiff and its agents, and to recover the substantial damages that they have caused Plaintiff.

THE PARTIES

5.     Plaintiff is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois. Plaintiff in a short amount of time since its formation in 2011 has become one of the largest and most successful copyright infringement firms in the Nation.

6.     Defendant Paul Godfread is an attorney who, upon information and belief, practices at 100 S. Fifth Street, Suite 1900, Minneapolis, Minnesota. Defendant Godfread is a major contributor and participant in the Internet community that is the primary source of the defamatory statements described herein. Defendant Godfread has made both written and oral statements to Plaintiff and its agents that are libelous and slanderous with respect to Plaintiff. Plaintiff has observed that those statements have appeared, or been incorporated, in comments on

2

the Internet sites referenced herein. Among other things, Defendant Godfread has falsely accused Plaintiff both verbally and in writing of committing crimes, fraud and other matters that, when he wrote and published them to third parties, constitute defamation *per se*. Upon information and belief, and based upon the fact that statements Godfread has made to Prenda have appeared in substantially the same form in Internet postings that are libelous to Plaintiff and referenced herein, Godfread is a participant in the community of anonymous Internet posters who have defamed and committed other tortious acts against Plaintiff. Furthermore, Godfread has made allegations in a complaint filed in the District Court for the Fourth Judicial District of Minnesota that are patently false. Yet, certain false and defamatory statements from that Complaint appeared on Internet sites referenced herein long before the Complaint was ever a matter of public record. As a consequence, and upon information and belief, Godfread published false and defamatory statements about Plaintiff to members of the community referenced herein, long before his Complaint was ever a matter of public record. As such, the statements, made outside of any valid legal proceeding, are not subject to immunity from liability that otherwise attaches to statements in Court documents.

7. Defendant Alan Cooper is an individual residing in Mille Lacs County, Minnesota. Defendant Cooper is a client of Defendant Godfread. Godfread represented to Plaintiff that certain of the false and defamatory statements referenced in Paragraph 6 derived from information provided to him by Cooper. As such, Cooper's false statements, when published to third parties, constitute defamation *per se*. Upon information and belief, and based upon the fact that false statements about Prenda attributed to Cooper have appeared in substantially the same form in Internet postings that are libelous to Plaintiff and referenced

3

herein, Cooper is a participant in the community of anonymous Internet posters who have defamed and committed other tortious acts against Plaintiff.

8.      Defendants Does 1 through 10 are individuals whose actual names are unknown to Plaintiff. Instead, they are known to Plaintiff only by the childish and unsophisticated — yet often exceedingly angry — pseudonyms they hide behind while falsely conversing in writing about Plaintiff and its agents on the Internet.

9.      Plaintiff has observed Defendants and others libeling it on the Internet.  Several examples of the actionable conduct of Defendants are set forth below and in the attachments to this Complaint.  Plaintiff intends to obtain Defendants' identities in discovery, at which time Plaintiff, if necessary, will seek leave of the Court to amend this Complaint to identify additional Defendants and additional claims.

## JURISDICTION AND VENUE

10.      Pursuant to 735 ILCS 5/2-209, this Court has personal jurisdiction over Defendants because, upon information and belief, Defendants either reside in, or committed unlawful acts in, St. Clair County, Illinois.

11.      Venue in this county is proper pursuant to 735 ILCS 5/2-101, because, upon information and belief, some or part of the transactions described herein occurred in this county and, upon information and belief, one or more of the Defendants reside in St. Clair County, Illinois.

## POTENTIAL OTHER DEFENDANTS

12.      Plaintiff may elect, after learning additional facts, to seek leave of the Court to amend this complaint to include other individuals as defendants in this action pursuant to 735 ILCS 5/2-405.

4

## BACKGROUND

13.     Prenda is a law corporation that pursues civil claims for computer-based offenses. It focuses largely on the pursuit of civil litigation against those who use computers to infringe upon others' copyrighted works for their own purposes, and who engage in contributory infringement by assisting others in infringing upon the same works. Prenda also represents clients who are victims of computer hacking.

### COPYRIGHT INFRINGEMENT CASES ARISING FROM USE OF THE BITTORRENT PROTOCOL

14.     The Internet has made nearly unlimited amounts of information and data readily available to anyone who wants to access it. Some of this information and data is private and available only to those who have lawful access to it. Owners attempt to protect this private content through the use of password authentication systems. Unfortunately, however, this does not ensure that content remains protected from unauthorized access. BitTorrent is a modern file sharing method ("protocol") used for distributing data via the Internet.

15.     Traditional file transfer protocols involve a central server, which distributes data directly to individual users. This method is prone to collapse when large numbers of users request data from the central server, in which case the server can become overburdened and the rate of data transmission can slow considerably or cease altogether. In addition, the reliability of access to the data stored on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

16.     Standard P2P protocols involve a one-to-one transfer of whole files between a single uploader and single downloader. Although standard P2P protocols solve some of the issues associated with traditional file transfer protocols, these protocols still suffer from such issues as scalability. For example, when a popular file is released (e.g. an illegal copy of the

latest blockbuster movie) the initial source of the file performs a one-to-one whole file transfer to a third party, who then performs similar transfers. The one-to-one whole file transfer method can significantly delay the spread of a file across the world because the initial spread is so limited.

17.     In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves. Further, the BitTorrent protocol involves breaking a single large file into many small pieces, which can be transferred much more quickly than a single large file and in turn redistributed much more quickly than a single large file. Moreover, each peer can download missing pieces of the file from multiple sources—often simultaneously—which causes transfers to be fast and reliable. After downloading a piece, a peer automatically becomes a source for the piece. This distribution method contrasts sharply with a one-to-one whole file transfer method.

18.     In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

19.     The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses.

20. The BitTorrent protocol is an extremely popular method for transferring data. The size of swarms for popular files can reach into the tens of thousands of unique peers. A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world. And every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of other peers.

21. The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing, and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

22. Efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures.

23. Plaintiff represents many clients throughout the country who have been victims of copyright infringement through the use of the BitTorrent protocol. Plaintiff has filed a large number of actions arising from copyright infringement on behalf of clients seeking monetary damages, injunctive relief and other damages arising from such wrongdoing. Because of the vast number of users who use BitTorrent protocol to infringe on a particular work, Plaintiff has represented clients in litigation against a large number of defendants whose names are unknown at the start of litigation. Plaintiff typically seeks the court presiding over the cases to allow the production of identifying information for the users, and, consistent with the strong judicial

preference for settling claims at every stage of the American judicial system, seeks to settle as many claims as it can as early as possible in litigation.

24.     The identification of BitTorrent users who commit copyright infringement, and the settlement of such claims, appears to have prompted the Defendants to make false and libelous statements against Plaintiff on the Internet.

## COMPUTER HACKING CASES

25.     Plaintiff has also represented many clients in pursuing civil claims against those who illegally access their computer systems.

26.     Hacking is the act of gaining access without legal authorization to a computer or computer system.  This is normally done through the use of special computer programming software.  This password cracking software repeatedly attempts to guess a password until the correct password is ascertained.  The software can attempt a great number of passwords in a short period of time, sometimes even a million per second, making this type of software very efficient at obtaining a password. Individuals that utilize this type of software are called hackers. Hackers employ various other means to gain unauthorized access to data such as identifying exploitable flaws in database codes.

27.     Once a password is obtained, the hacker has unauthorized access to the protected content as long as the password remains valid.  Sometimes a hacker will post the hacked password on a hacked password website, making it available to the members or visitors of that website.  The hacker may even charge individuals for use of the hacked password and make a profit off of the loss and harm he or she has caused to the website owner or users.  There are not necessarily any limits on how often or by how many people a password can be used, so a single hacked password can potentially allow unauthorized access to significant numbers of individuals.

8

28. Plaintiff's efforts to identify computer hackers who illegally access and remove property and/or information from its clients' websites, and the settlement of such claims, appears to have prompted the Defendants to make false and libelous statements against Plaintiff on the Internet.

## DEFENDANTS' LIBELOUS STATEMENTS

29. Plaintiff has performed a limited review of the Internet communities run and operated by the Defendants. The number of such published comments in these communities is vast. Plaintiff in this section lists several of the more egregious comments made by the Defendants.

30. Because the Defendants posted the comments referred to in this Complaint under pseudonyms, Plaintiff has no way of knowing without discovery the identity of the person who wrote and published specific comments. Furthermore, Plaintiff has no way of knowing if multiple individuals use the pseudonym to make comments; of if one writer uses multiple pseudonyms to libel Plaintiff. For those reasons, and because the pseudonyms Defendants used are uninformative, Plaintiff includes the following libelous statements that Plaintiff has observed on the Internet, along with a reference to attached screenshots of the statements, which in turn identify the pseudonym and when the comment was first put onto the Internet. (True and correct copies of the group screenshots that Plaintiff has gathered in preparing this Complaint are attached hereto at *Exhibits "A"* ("S1" references) and *Exhibit "B"* ("S2" references) and made a part hereof.)

31. Each of the statements listed below was written, and published, less than one year from the date hereof. Plaintiff lists example comments in the remainder of this section; due to

the many grammatical, spelling, logical and other errors in the comments, Plaintiff includes corrections only where they serve to explain the meaning of certain comments.

32. "[W]e all know Prenda's colorful history and hard for a legit attorney to immediately comprehend as it is initially hard to believe…" (Ex. 1).

33. "Sorry, we are talking about Pretenda Law, this ship will sink on its own. They literally have to create there [sic] own client, computer monitoring service, and of recent steal Alan Coopers idenity to have a CEO of a offshore company. The judicial system loves this kind of stuff. I guess we just need to create a Pretenda Law care (history) package and send it to every case the file." (Ex. 2).

34. "Would be a great idea to make a comprehensive list of all scams and BS pretenda [sic, "Prenda"] has perpetrated and make it easy accessible for Does and lawyers so they have ammunition for these cases and can raise awareness to juridisdiction/courts/judges/attorney generals/and Doe lawyers who may be unfamiliar with prendas BS and dont have time or the means to educate themselves about the frauds." (Ex. 2).

35. "Some ships are designed to sink… others require our assistance.'" (Ex. 3). [dietrolldie.com signature block for each and every post]

36. "This section [of a Prenda court filing] is truly a masterpiece of equine excrement, which even a failing law school student would think twice before submitting for a grade. Take a read of this section and try not to choke on what Prenda" writes. (Ex. 4).

37. Referring to Prenda Law; Troll Schulz – this isn't easy money and your reputation (if you have one) is going to be associated with a$$hats and criminals." (Ex. 5).

38. Screenshot parodying Simpsons chalkboard scene; Bart Simpson repeatedly writing "I will not file frivolous lawsuits," captioned "Prenda Ethics Training" (Ex. 6).

10

39.     "Would be nice though if [an attorney performing work for Plaintiff] finally grew a brain and decided to cut his losses and quit the scam and dis-associate himself from Prenda. I am looking forward to the end of the month with news of victory for Abrahams." (Ex. 7).

40.     "Prenda was so stupid that they then filed a single-Doe case against Abrahams even with the registration problem. Due to the history of shameless fraud in this case, I'm hoping Yuen makes them pay for this one. They didn't have quite the registration problems with Wong v. HDP, so I believe there is more opportunity to turn the screws and maybe even go for sanctions, damages or class action with this one. I can envision a class-action suit with all defendants from HDP v. Does 1-118 as a class, since they were all victims of extortion attempts based on Prenda's fraudulent claims that the work was registered." (Ex. 8).

41.     "Prenda then doesn't have to prove that the John Doe or Mr. Hatfield infringed. It then becomes Mr. Hatfield's responsibility to do this and seek legal action against John Doe to make him pay his portion of the fine. Pretty slick idea isn't it – In a slimy bottom feeding lawyer way. Note: not all lawyers are like this, but if the shoe fits…" (Ex. 9).

42.     "Funny how Prenda will not actually name its investigators and the company they employ. Well I will – Company: 6881 Forensics LLC. Investigator (term very loosely applied): Peter Hansmeier. This is nothing more than a Prenda cover for the Steele/Hansmeier operations that stinks of questionable personnel, untested "forensic" software, non-certified forensic/Investigative personnel, unethical behavior, and an incestuous relationships of all parties involved. " (Ex. 10).

43.     "Just more FUD from the great minds at Prenda. Keep it up boys, just more evidence to support the abuse of process and harassment claims." (Ex. 11).

11

44.     "Wow.. This is exactly the same message I got today. I knew it was a robo call by the cheap ass voice. I guess these crooks have too much on their plate." (Ex. 12).

45.     "Not that Prenda really cares about possible defendant guilt or innocence. They only want to generate settlements and the possibility of innocent parties only messes up their business model. In their eyes, all the defendants are guilty." (Ex. 13).

46.     Prenda's "repulsive business model started the same way in the Federal system and now because of our actions, is moving on to new uncharted ground. I'm sure some of our friendly lawyers will enlighten us on the veiled "30 day" reference. That or the affected Does will find us via Google and the fun begins. You claims of great success in the courts is the usual Troll bravado. Yawn……. We understand we will not be successful all the time, but we are one hell of a thorn in your side. The thorn will fester and your operations will suffer for it." (Ex. 14).

47.     "It stills seems like [attorneys performing work for Prenda] and Prenda are saying "we promise to be trustworthy even though we have a long record of not being trustworthy". Why not treat wolves to free bottles of steak sauce to discourage their attacks?" (Ex. 15).

48.     "Well I got to give it to the sneaky minds at Prenda Law." (Ex. 16).

49.     Prenda's litigation "is a blatant abuse of the rule 45 (we'll hear about this particular sleaziness soon)." (Ex. 17).

50.     "[L]et's be clear about what Prenda was doing. They publicly accused Abrahams of being a criminal, while pressuring him to pay them to stop publicly accusing him of being a criminal. This is the definition of blackmail …" (Ex. 18).

51.     "Prenda employs a brain-damaged attorney. Sooner or later John will have to pimp his blonde to cover his a$$!" (Ex. 19).

12

52. "Yet one more reason why these efforts at extortion will never see the inside of a courtroom." (Ex. 20).

53. "Media Copyright Group, 6881 Forensics, etc.; this is the basis for what gets Prenda and the other Trolls their subpoenas granted. Destroy this and their operation takes a dive. Don't lose faith and keep telling the Trolls to bring it on. They don't want a full-out trial, only your money." (Ex. 21).

54. "Prenda also apparently has decided to pack up and move the scam to the California Eastern District" (Ex. 22).

55. "Dan Booth and Jason Sweet are currently involved in multiple battles with Prenda's local goon and swindler Daniel Ruggiero." (Ex. 23).

56. "It is hardly a surprise to those who follow Prenda and other trolls: cockroaches tend to explore cracks in the floor (in this case, in the floor of the US judicial system)." (Ex. 24).

57. "Many local counsels deceived by Prenda turned out to be ethical attorneys (George Banas, Jonathan Torres, Matthew Wasinger, Trina Morrison…) and would not even think about associating their names with Prenda scumbags if they knew how much their cores are rotten. Seeing that, I would not rush and blame an underemployed attorney: I hope he will smell the stink of decay that the criminal organization Prenda exudes and will resign from this case — the sooner the better. (Ex. 25).

58. "It was obvious that a rash of CFAA cases filed in state courts by Prenda con artists — Guava v. Skylar Case (Cook county, IL), Guava v. Spencer Merkel (Hennepin county, MN), and Arte de Oaxaca v. Stacey Mullen (Cook county, IL) — were sham lawsuits that employed the same scheme." (Ex. 26).

13

59.     "Prenda's fraudulent activity continues unabated: new harassing calls, ransom letters etc." (Ex. 27).

60.     Recently I heard too many reports that Steele Hansmeier / Prenda Law / Anti-Piracy Law Group has intensified its harassing calls. And the crook on the other end of the phone line is no one else but previously "retired" (or rather fired — after he foolishly disobeyed his master's order to move to Las Vegas) Mark Lutz. These calls are beyond fraud." (Ex. 27).

61.     "I assume they're calling everyone in their shakedown database and trying to get cash before they kill Prenda, leave the country, or go to jail..not sure which one will come first." (Ex. 28).

62.     "While "Prenda" was a rather neutral term (please don't start the "Pretenda" joke), ironically the criminal enterprise has managed to embed the deceit as a modus operandi in its very name: one simply cannot be anti- its own turf. It's like if a plumber would declare that he is anti-sewage. Or a lion would declare that he is anti-meat." (Ex. 29).

63.     "We all know how Prenda crooks have been doing a hard work of depriving people a say in the court, the very people they rape" (Ex. 30).

64.     "Is Prenda calling it quits or cooking a new fraud?" (Ex. 31).

65.     "I cannot read crooked minds, and undeniably, we don't have enough information to speculate about both why all these sudden dismissals are taking place, and why the most suspicious "plaintiffs" were spared at this time. I hope that Prenda's impudent fraudulent activities have finally caught attention of law enforcement, and the crooks are on the run." (Ex. 32).

66.     "Does 'under penalty of perjury' mean anything? Apparently not for Prenda and one of its plaintiffs." (Ex. 33).

14

67.     [W]e consider your clients [i.e., Prenda] the worst representatives of our society and do everything in our ability to accelerate their downfall, this case will continue to gain publicity. I expect bigger media outlets (TechDirt, ArsTechnica, Wired) to spread the news pretty soon." (Ex. 34).

68.     (Fight Copyright Trolls email to Prenda's Florida attorneys for the sanction hearing attempting to threaten them to get off of the case) "His masters [i.e., Florida attorneys working on behalf of Prenda], criminal masterminds from now being abandoned ship Prenda, are not in much better situation." (Ex. 35).

69.     "[C]rooked bosses [i.e., Prenda] are in the process of pulling a machination — abandoning the old corporation (most likely, to avoid writing the annual report and to get rid of bad publicity) and creating another one — with the same people, same mailing address, same website and same goal — mass extortion." (Ex. 36).

70.     "SJD, since you have a habit of sending welcome letters to new local counsels, you must have many of them in your address book already. How about sending Prenda's a helpful note regarding their employer's current lack of good standing? Some of these guys may be naive, they may be stupid, a few may even be genuinely evil, but I'll be all of them are lawyer enough and have a strong enough sense of self-preservation to find the idea of "Personal Liability" utterly terrifying. You may have the means to trigger a collecting pants-soiling and send the rats over the sides of this sinking ship." (Ex. 37).

71.     "Why anyone wants to abandon the company that is not bankrupt, that has a nice positive settlement cash flow, not being sued etc.? Only crooks need machinations like this to operate." (Ex. 38).

15

72. "Too many of the marks were Googling "Prenda" and discovering what assclowns they are. Not good for business. Am I the only one wondering if they plan to keep on changing their skin every year, just as the annual report comes due?" (Ex. 39).

73. It took only a year before the majority of judges in the country started recognizing the name "Prenda," frowning every time they hear it. What our fraudsters are supposed to do? Maybe simply changing the name will help?" (Ex. 40).

74. "I bet you know an amateurish-looking portal Wefightpiracy.com whose few goals are simpler than its design: to spread FUD, to justify criminal activity with the help of poorly-articulated ideas lifted from multiple copyright maximalists, and to facilitate defamation." (Ex. 40).

75. "[O]ur bandits are now called "Anti-Piracy Law Group" in an attempt to squeeze a couple of more dimes from the judicial system bastardized by them." (Ex. 40).

76. "I say we all chip in and order one of those "How to Survive in Prison" books for each Prenda attorney and have like a dozen sent to Duffy's office in Chicago because guaranteed all of those clowns in the office know about it too. Maybe order Duffy's wife a book about how to deal with her husband being in prison... "You and your spouse are now separated by plexiglass" hahaha." (Ex. 41).

77. These [i.e.,Prenda attorneys] are the kind of people who would rob their families blind if it suited their ambitions. A few decades ago, Psychologist would be diagnosing these clowns as Criminal Psychopaths (now it's called Antisocial because the public had hurt feelers) ... [T]his is the same psychosis that drives (drove) people like Bundy and Dahmer ... These men have ... the mentality of Ted Bundy..." (Ex. 41).

16

78.     "[W]e've destroyed the reputation of every single Prenda associated troll who stuck it out ... For example, Google "Paul Lesko" and the second result that I get is a link to a story about Lesko and "Teen Anal Sluts" hahahaha." (Ex. 42).

79.     "And this is where blogs like this come in. When a law partner google a prospective new hire's name, and the first hit is an expose of that person on fightcopyrighttrolls.com describing how they shook down a poor, defenseless gramma for a few thousand dollars over an illegal download of "stop daddy, my ass is on fire" ... that may raise a few eyebrows ..., lawyers will soon loathe to be associated with Prenda, ... Let's share a toast to seeing America's bigger n better version blow up even more dramatically, eh?" (Ex. 42).

80.     Prenda has a "history of fraud..." " (Ex. 43).

81.     "The thing to keep in mind is that no matter how vicious they get, they still have no teeth...When things get real, they're just a bunch of bumbling idiots playing a massive game of "Who's on first?"." (Ex. 44).

82.     "We won't hear about it until they make arrests but I'm pretty sure Prenda has been on the FBI's radar for quite some time." (Ex. 45).

83.     "Every time a new guy understood that the newly acquired stink he couldn't get rid of is exuded by Prenda Law, he ran away as quickly as possible. Even 75% contingency fee cannot persuade local lawyers to stain their future careers by associating themselves with a lawfirm that is actively investigated by the Florida Bar Association, and is expected to be investigated criminally in the nearest future." (Ex. 46).

84.     "Prenda engages in fraud upon the public and the judicial system, [and][ a careful reading of this transcript will put those doubts to rest. Prenda's past and current employees ... all misrepresent their capacity and involvement in this circus..." (Ex. 47).

17

85.     A "cast of idiots ... run[s] Prenda Law." (Ex. 48).

86.     "I encourage you to read the comments to understand the unprecedented extent of Prenda's arrogance and bad faith."(Ex. 49). "Since I used words farce, fraud, frivolous describing much less brazen abuses of the court system by copyright trolls, I ran out of epithets. I cannot find proper words that describe this garbage. And it will get even worse: we will for sure witness more fraud if Prenda criminals are not deterred ASAP." (Ex. 50).

87.     "The reason ... Prenda "gang" ... have their law licenses is because the IARDC works at an INCREDIBLY SLOW pace." (Ex. 51).

88.     "Prenda's clowns are incompetent enough when calm and sober." (Ex. 52).

89.     Below is Raul's translation from Pinocchiolean:  Full-Time Apprentice Copyright Troll (mill valley) Mill Valley Of Counsel to Copyright Troll Firm, Prenda Law, seeking full-time apprentice troll to help maintain the caseload provided by a nationally disdained Chicago-based copyright troll firm specializing in a barely legal extortion racket. Currently, this is a one-person scumbag operation, and will be looking for someone to work with that one person directly to accomplish the tasks presented. Very sleazy environment in the office but we keep lots of beer on hand to please our leader, Master Troll John Steele, in case he visits us from sunny Florida. A lot of opportunities to appear in State and Federal courts to receive lashing by judges, potential sanctions, and unanimous contempt by others in the legal profession.  Necessary Qualifications: - No clear moral compass; - Ability to work independently on certain projects like harassing grandmothers, the blind, and the innocent; - Love of money above all else; - Good at not being good but being a little evil; - Must be proficient in Douchebaggery; - Creative in lying to others." (Ex. 53, 54).

18

90.     "Being affiliated with Prenda will and likely is toxic to any attorney's reputation and, as in any profession, reputation is everything ... Put "Prenda Law, LLC" on your resume and guaranteed, no one will hire you so the lawyers there better make as much as they can, as fast as they can because no semi-reputable law firm or even hick county public defender's office will wanna go near them afterward. Their reputation, tainted. Freshly-minted JDs associated with Prenda, wow, they're boned." (Ex. 55).

91.     "[I]if at this moment any of Prenda's criminals ... were nearby, I honestly don't know if I would be able to restrain myself ..". "The crooks must be stopped unless it is too late ... Please don't be passive." (Ex. 56).

92.     Prenda is "about 1 step up from the people who send emails looking for help to move millions of dollars from other countries and just need your bank details or you to send some fee money to make it happen. They prey on people and are parasites, and we try to give people the best possible defense... information. If you know it is a scam, and they will say anything to make a buck their words are much less scary." (Ex. 57).

93.     "[A]t least few uneducated Does would contact Prenda for clarifications, and be conned as a result. As I repeatedly state, talking to a troll is a big no-no: you cannot outfox seasoned fraudsters." (Ex. 58).

94.     "Prenda's continuous disregard of ethics leads to a motion for sanctions." (Ex. 59).

95.     "Prenda utilizes the entire database of addresses they were able to loot using unsuspecting courts as burglary tools ... this is a deliberate fraud on the federal court." (Ex. 60).

96.     Reading this "journalism," you might mistake corrupt, state judge LeChien — who issues subpoenas for alleged crimes he cannot try — for Justice Brandeis." (Ex. 61).

19

97. "Prenda Law is an infamous clique of lawyers who file hundreds of mass extortion-like lawsuits against peer-to-peer users who allegedly share copyrighted pornography movies. This outfit has no desire to progress their cases to the actual litigation ...Prenda Law comprises some creative con artists and managed to deceive judges around the country for more than a year." (Ex. 62).

98. "Shame on Judge LeChien for allowing this to happen and shame on Prenda for engaging in Grisham (the antagonists) like behavior ... "His Honor" may face some awkward questions sooner rather than later.." (Ex. 63).

## COUNT I – LIBEL *PER SE*
### *(False Allegations of Criminal Offenses)*

99. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

100. Defendants made the statements set forth in Paragraphs 29 through 98, as well as a vast number of similar statements, posted to the same and similar Internet sites. Those statements remained on those sites until at least shortly before the filing of this Complaint, and thus are still, as of the date hereof, being published without restriction to any person in the world with an Internet connection who visits those unrestricted sites.

101. The statements set forth in Paragraphs 29 through 98 falsely allege that Prenda, and its agents, have committed criminal offenses. Among other things, and as set forth therein, one or more Defendant wrote, and published to third parties, statements that Prenda, and/or attorneys working for or on its behalf, were engaged in a "scam" and "criminality;" being "crooks;" engaging in "blackmail" and an "extortion scheme;" being "crooked;" engaging in "criminal acts;" and being "seasoned fraudsters." One such Defendant declared that Prenda's attorneys were "like Dahmer and Bundy," two mass murders.

20

102.    Defendants' false statements accusing Plaintiff of criminal offenses generally, and specific criminal offenses such as extortion, blackmail and fraud, are libelous *per se*.

103.    Defendants made those statements with either knowledge of their falsity, or in reckless disregard of the truth.  Neither Plaintiff, nor any individual performing work for it, is a public figure.  In many of those statements, however, Defendants admit that they were making false statements with actual malice, for the express purpose of damaging the business reputation of Prenda, its clients and attorneys performing work on its behalf.  Among other things, one or more Defendant stated that his purpose in making defamatory statements was to assure that being associated with Prenda was toxic to any attorney's reputation.

104.    Defendants' false and defamatory statements that Plaintiff has committed criminal offenses has caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

### COUNT II – LIBEL *PER SE*
### (False Allegations of Want of Integrity in Employment)

105.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

106.    Defendants made the statements set forth in Paragraphs 29 through 98, as well as a vast number of similar statements, posted to the same and similar Internet sites.  Those statements remained on those sites until at least shortly before the filing of this Complaint, and thus are still, as of the date hereof, being published without restriction to any person in the world with an Internet connection who visits those unrestricted sites.

107.    The statements set forth in Paragraphs 29 through 98 falsely allege that Prenda, and its agents, want of integrity in employment.  Among other things, and as set forth therein, one or more Defendant wrote, and published to third parties, statements that Prenda, and/or

21

attorneys working for or on its behalf, were engaged in a "scam" and "criminality;" "evil;" that they are not "legitimate" attorneys; they are "crooked;" "incompetent;" that they "facilitate defamation;" are "goons" who are participating in "fraud on the court[s];" are "bottom feeding;" "crooks;" and that they "shook down a poor, defenseless gramma for a few thousand dollars over an illegal download of 'stop daddy, my ass is on fire'"

108.    Defendants' false statements accusing Plaintiff of want of integrity in employment as attorneys are libelous *per se.*

109.    Defendants made those statements with either knowledge of their falsity, or in reckless disregard of the truth. Neither Plaintiff, nor any individual performing work for it, is a public figure. In many of those statements, however, Defendants admit that they were making false statements with actual malice, for the express purpose of damaging the business reputation of Prenda, its clients and attorneys performing work on its behalf. Among other things, one or more Defendant stated that his purpose in making defamatory statements was to assure that being associated with Prenda was toxic to any attorney's reputation.

110.    Defendants' false and defamatory statements that Plaintiff has committed criminal offenses has caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

### COUNT III – LIBEL *PER SE*
#### *(False Allegations Imputing Lack of Ability in Plaintiff's Profession)*

111.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

112.    Defendants made the statements set forth in Paragraphs 29 through 98, as well as a vast number of similar statements, posted to the same and similar Internet sites. Those statements remained on those sites until at least shortly before the filing of this Complaint, and

22

thus are still, as of the date hereof, being published without restriction to any person in the world with an Internet connection who visits those unrestricted sites.

113. Many of the statements set forth in Paragraphs 29 through 98 falsely allege that Prenda, and its agents, lack professional ability. Among other things, and as set forth therein, one or more Defendant wrote, and published to third parties, statements that Prenda, and/or attorneys working for or on its behalf, are "incompetent;" "naïve;" "stupid;" "evil;" "criminals" "crooks" and "seasoned fraudsters."

114. Defendants' false statements that Plaintiff and its agents lack ability as attorneys, their profession, are libelous *per se*.

115. Defendants made those statements with either knowledge of their falsity, or in reckless disregard of the truth. Neither Plaintiff, nor any individual performing work for it, is a public figure. In many of those statements, however, Defendants admit that they were making false statements with actual malice, for the express purpose of damaging the business reputation of Prenda, its clients and attorneys performing work on its behalf. Among other things, one or more Defendant stated that his purpose in making defamatory statements was to assure that being associated with Prenda was toxic to any attorney's reputation.

116. Defendants' false and defamatory statements that Plaintiff wants of ability in its profession has caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

## COUNT IV – LIBEL *PER SE*
### (False Allegations of Plaintiff's Agents of Fornication and Adultery)

117. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

118.    Defendants made the statements set forth in Paragraphs 29 through 98, as well as a vast number of similar statements, posted to the same and similar Internet sites. Those statements remained on those sites until at least shortly before the filing of this Complaint, and thus are still, as of the date hereof, being published without restriction to any person in the world with an Internet connection who visits those unrestricted sites.

119.    Certain statements set forth in Paragraphs 29 through 98 falsely allege that Prenda's agents committed fornication and adultery. Among other things, Defendants have accused Plaintiff's agents of "incest," being "cornholers" and promoting prostitution

120.    Defendants' false statements as to fornication and adultery are libelous *per se.*

121.    Defendants made those statements with either knowledge of their falsity, or in reckless disregard of the truth. Neither Plaintiff, nor any individual performing work for it, is a public figure. In many of those statements, however, Defendants admit that they were making false statements with actual malice, for the express purpose of damaging the business reputation of Prenda, its clients and attorneys performing work on its behalf. Among other things, one or more Defendant stated that his purpose in making defamatory statements was to assure that being associated with Prenda was toxic to any attorney's reputation.

122.    Defendants' false and defamatory statements that Plaintiff wants of ability in its profession has caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

## COUNT V – FALSE LIGHTS

123.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

24

124.    Each of the Defendant's statements has placed Plaintiff in a false lights before the public. In addition to those set forth in the preceding Counts of this Complaint, Defendants have published statements that Prenda's agents have "psychosis like Dahmer and Bundy," two convicted mass murderers; engage in "mass extortion;" and will soon be jailed. One Defendant bragged that, due to his efforts, a google search of an attorney formerly associated with Prenda would produce, as the second result, the attorney's name with "a link to a story about [the attorney] and 'Teen Anal Sluts' hahahaha."

125.    The false lights, as alleged above, were of such a nature as to be highly offensive to a reasonable person.

126.    Defendants' false and defamatory statements have caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

## COUNT VI – TORTIOIUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

127.    The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

128.    At all times relevant hereto, Plaintiff was a party to valid and enforceable contracts with third parties. Those third parties included clients that retained Plaintiff to represent them in court, and attorneys who performed work as agent or of counsel to Plaintiff.

129.    Some or all Defendants admitted, in published statements referenced above and in other statements, that they were aware that Plaintiff had such business relationships with its clients and attorneys performing work on its behalf.

25

130. Defendants intentionally engaged in the unjustified inducement of a breach, by making false and defamatory statements about Plaintiff. Several Defendants expressly admitted that they published such statements to alienate Plaintiff from its clients and attorneys.

131. Defendants' wrongful conduct caused subsequent breaches of parties to which Plaintiff was a party by third parties. Among other things, Prenda lost both clients and attorneys as a consequence of certain defamatory statements that Defendants published, and by other conduct by Defendants.

132. Defendants' false accusations has caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

### COUNT VII – TORTIOIUS INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP

133. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

134. The allegations contained in the preceding paragraphs are hereby re-alleged as if fully set forth herein.

135. At all times relevant hereto, Plaintiff had a reasonable expectation of entering into valid business relationships with third parties, including prospective clients and attorneys whom Plaintiff may have retained or contracted with to representation of its clients.

136. Some or all Defendants admitted, in published statements referenced above and in other statements, that they were aware that Plaintiff had a reasonable expectation of entering into valid business relationships with prospective clients and attorneys who may work on its behalf.

137.   Plaintiff was a party to valid and enforceable contracts with third parties. Those third parties included clients that retained Plaintiff to represent them in court, and attorneys who performed work as agent or of counsel to Plaintiff.

138.   Some or all Defendants admitted, in published statements referenced above and in other statements, that they were aware that Plaintiff had such business relationships with its clients and attorneys performing work on its behalf.

139.   Defendants intentionally engaged in the unjustified interference that prevented Plaintiff's legitimate expectancy from ripening into valid business relationships.

140.   Defendants' false and defamatory statements have caused Plaintiff significant actual damages including, but not limited to, damaged reputation, loss of revenue, loss of prospective clients and other damages.

## COUNT VIII – CIVIL CONSPIRACY

141.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

142.   The Defendants collaborated with one another by planning, coordinating and assisting one another in preparing the defamatory statements that were disseminated to third-parties via the Internet "communities" referenced above. Each Defendant engaged in a concerted action with other Defendants and yet unnamed individuals to defame and commit other tortious conduct against Plaintiff.

143.   Each Defendant who posted false and defamatory comments in connection with this "community" thus conspired with other Defendants to commit defamation and other tortious actions against Plaintiff.

27

144.   In furtherance of this civil conspiracy, Defendants and others committed overt tortious and unlawful acts by making and publishing to third parties false and defamatory statements about Plaintiff, and each was a willful participant in this joint activity.

145.   As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests Judgment and relief as follows:

1)   Judgment against Defendant that they have committed the torts set forth in each of Count I through Count VIII hereof;

2)   Judgment in favor of the Plaintiff and against the Defendants for damages in excess of $100,000 against each Defendant to be ascertained at trial;

3)   Judgment in favor of Plaintiff against the Defendants awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

4)   Judgment in favor of the Plaintiff against the Defendants, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

29

Respectfully submitted,

PRENDA LAW, INC.

By: _[signature]_
Paul Duffy (Bar No. 6210496)
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile: (312) 893-5677
E-mail: paduffy@wefightpiracy.com
*Attorney for Plaintiff*

DATED: February 11, 2013

Kevin T. Hoerner
Bar No. 06196586
Becker, Paulson, Hoerner & Thompson, P.C.
5111 West Main Street
Belleville, IL 62226
Telephone: (618) 235-0020
Facsimile: (618) 235-8558
*Attorney for Plaintiff*