# EXHIBIT B

**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13 LLC, | Case No. 2:12-cv-8333-ODW(JCx) |
|         Plaintiff,<br>   v.<br>JOHN DOE,<br>        Defendant. | **ORDER ISSUING SANCTIONS** |

"The needs of the many outweigh the needs of the few."
—Spock, *Star Trek II: The Wrath of Khan* (1982).

## I.   INTRODUCTION

Plaintiffs[1] have outmaneuvered the legal system.[2]  They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs.  And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic video.  Then they offer to settle—for a sum

---

[1] The term "Plaintiffs" used in this order refers to AF Holdings LLC, Ingenuity 13 LLC, as well as related entities, individuals, and attorneys that collaborated in the underlying scheme fronted by AF Holdings and Ingenuity 13.

[2] This order concerns conduct committed in the following related cases: *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

1 calculated to be just below the cost of a bare-bones defense. For these individuals,

2 resistance is futile; most reluctantly pay rather than have their names associated with

3 illegally downloading porn. So now, copyright laws originally designed to

4 compensate starving artists allow, starving attorneys in this electronic-media era to

5 plunder the citizenry.

6 Plaintiffs do have a right to assert their intellectual-property rights, so long as

7 they do it right. But Plaintiffs' filing of cases using the same boilerplate complaint

8 against dozens of defendants raised the Court's alert. It was when the Court realized

9 Plaintiffs engaged their cloak of shell companies and fraud that the Court went to

10 battlestations.

11 **II.    PROCEDURAL HISTORY**

12 The Court issued its February 7, 2013 Order to Show Cause re Sanctions to

13 allow counsel, Brett Gibbs, to explain why he ignored the Court's discovery-stay

14 Order, filed complaints without reasonable investigation, and defrauded the Court by

15 asserting a copyright assignment secured with a stolen identity. (ECF No. 48.)  As

16 evidence materialized, it turned out that Gibbs was just a redshirt.

17 Gibbs's behavior in the porno-trolling collective was controlled by several

18 attorneys, under whom other individuals also took their orders. Because it was

19 conceivable that these attorneys (and others) were culpable for Gibbs's conduct, the

20 Court ordered these parties to appear.

21 The following additional parties were ordered to appear: (a) John Steele, of

22 Steele Hansmeier PLLC, Prenda Law, Inc., and/or Livewire Holdings LLC; (b) Paul

23 Hansmeier, of Steele Hansmeier PLLC and/or Livewire Holdings LLC; (c) Paul

24 Duffy, of Prenda Law, Inc.; (d) Angela Van Den Hemel, of Prenda Law, Inc.;

25 (e) Mark Lutz, of Prenda Law, Inc., AF Holdings LLC, and/or Ingenuity 13 LLC;

26 (f) Alan Cooper, of AF Holdings LLC; (g) Peter Hansemeier, of 6881 Forensics, LLC;

27 (h) Prenda Law, Inc.; (i) Livewire Holdings LLC; (j) Steele Hansmeier PLLC; (k) AF

28 Holdings LLC; (l) Ingenuity 13 LLC; (m) 6881 Forensics, LLC; and (n) Alan Cooper,

of 2170 Highway 47 North, Isle, MN 56342.  (ECF Nos. 66, 86.)  These parties were ordered to show cause why they should not be sanctioned for their behind-the-scenes role in the conduct facially perpetrated by Gibbs.  These parties were also ordered to explain the nature of their operations, relationships, and financial interests.

### III.   LEGAL STANDARD

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996).  The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994).  Though this power must be exercised with restraint, the Court has wide latitude in fashioning appropriate sanctions to fit the conduct.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980).

Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct.  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).  This inherent power extends to a full range of litigation abuses, the litigant must have engaged in bad faith or willful disobedience of a court's order.  *Id.* at 992.  Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991).

### IV.   DISCUSSION

**A.    Findings of fact**

Based on the evidence presented on the papers and through sworn testimony, the Court finds the following facts, including those based on adverse inferences drawn from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify.[3]

1.    Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices.  Seeking easy money, they conspired to operate this enterprise and

---

[3] Even if their refusal was based on the Fifth Amendment privilege against self-incrimination, the Court still may draw adverse inferences against them in this civil proceeding.  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

1    formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for
2    the sole purpose of litigating copyright-infringement lawsuits. They created these
3    entities to shield the Principals from potential liability and to give an appearance of
4    legitimacy.

5    2.    AF Holdings and Ingenuity 13 have no assets other than several
6    copyrights to pornographic movies. There are no official owners or officers for these
7    two offshore entities, but the Principals are the de facto owners and officers.

8    3.    The Principals started their copyright-enforcement crusade in about 2010,
9    through Prenda Law, which was also owned and controlled by the Principals. Their
10   litigation strategy consisted of monitoring BitTorrent download activity of their
11   copyrighted pornographic movies, recording IP addresses of the computers
12   downloading the movies, filing suit in federal court to subpoena Internet Service
13   Providers ("ISPs") for the identity of the subscribers to these IP addresses, and
14   sending cease-and-desist letters to the subscribers, offering to settle each copyright-
15   infringement claim for about $4,000.

16   4.    This nationwide strategy was highly successful because of statutory-
17   copyright damages, the pornographic subject matter, and the high cost of litigation.
18   Most defendants settled with the Principals, resulting in proceeds of millions of
19   dollars due to the numerosity of defendants. These settlement funds resided in the
20   Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13.
21   No taxes have been paid on this income.

22   5.    For defendants that refused to settle, the Principals engaged in vexatious
23   litigation designed to coerce settlement. These lawsuits were filed using boilerplate
24   complaints based on a modicum of evidence, calculated to maximize settlement
25   profits by minimizing costs and effort.

26   6.    The Principals have shown little desire to proceed in these lawsuits when
27   faced with a determined defendant. Instead of litigating, they dismiss the case. When
28   pressed for discovery, the Principals offer only disinformation—even to the Court.

4

7.      The Principals have hired willing attorneys, like Gibbs, to prosecute these cases.  Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions.  In some instances, Gibbs operated within narrow parameters given to him by the Principals, whom he called "senior attorneys."

8.      The Principals maintained full control over the entire copyright-litigation operation.  The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9.      The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN 56342).  The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.  Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele.  There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

10.      The Principals ordered Gibbs to commit the following acts before this Court: file copyright-infringement complaints based on a single snapshot of Internet activity; name individuals as defendants based on a statistical guess; and assert a copyright assignment with a fraudulent signature.  The Principals also instructed Gibbs to prosecute these lawsuits only if they remained profitable; and to dismiss them otherwise.

11.      Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared.  Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.  But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them.  With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

## B. Sanctions

Although the Court originally notified the parties that sanctions would be imposed under Federal Rule of Civil Procedure 11(b)(3) and Local Rule 83-3, the Court finds it more appropriate to sanction the parties under its inherent authority. *See In re DeVille*, 361 F.3d 539, 550 (9th Cir. 2004) ("[T]he bankruptcy court's failure to specify, in advance of the disciplinary proceedings, that its inherent power was a basis for those proceedings, did not serve to undercut its sanctioning authority."). The sanctions for Plaintiffs' misconduct are as follows.

### 1. Rule 11 sanctions

The Court maintains that its prior analysis of Plaintiffs' Rule 11 violations is accurate. (ECF No. 48.) Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm. But Plaintiffs did not conduct a sufficient investigation to determine whether that person actually downloaded enough data (or even anything at all) to produce a viewable video. Further, Plaintiffs cannot conclude whether that person spoofed the IP address, is the subscriber of that IP address, or is someone else using that subscriber's Internet access. Without better technology, prosecuting illegal BitTorrent activity requires substantial effort in order to make a case. It is simply not economically viable to *properly* prosecute the illegal download of a single copyrighted video.

Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed *prior* to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at that.

For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But

1  Denton's property is not a large estate; it is a small house in a closely packed
2  residential neighborhood.  There are also no gates visible.



20  Gibbs's statement is a blatant lie.  His statement resembles other statements
21  given by Plaintiffs in this and their other cases: statements that sound reasonable but
22  lack truth.  Thus, the Court concludes that Gibbs, even in the face of sanctions,
23  continued to make factual misrepresentions to the Court.

24  Nevertheless, Rule 11 sanctions are inappropriate here because it is the wrong
25  sanctions vehicle at this stage of litigation.  The cases have already been dismissed
26  and monetary sanctions are not available.  Fed. R. Civ. P 11(c)(5)(B) (a court cannot
27  impose a monetary sanction on its own unless it issued the show-cause order before
28  voluntary dismissal).  The more appropriate sanction for these Rule 11 violations is

1  what the Court had already imposed: denial of requests for early discovery. (ECF

2  No. 28.)

3          *2.       Sanctions under the Court's inherent authority*

4         In addition to Gibbs's misrepresentations, there is the matter of the ignored

5  Court Order vacating early discovery. (ECF No. 28.) The evidence does not show

6  that the Order was ignored because of miscommunication among Plaintiffs. The

7  Order was purposely ignored—hoping that the ISPs were unaware of the vacatur and

8  would turn over the requested subscriber information.

9         Then there is the Alan Cooper forgery. Although a recipient of a copyright

10  assignment need not sign the document, a forgery is still a forgery. And trying to pass

11  that forged document by the Court smacks of fraud. Unfortunately, other than these

12  specific instances of fraud, the Court cannot make more detailed findings of fraud.

13         Nevertheless, it is clear that the Principals' enterprise relies on deception. Part

14  of that ploy requires cooperation from the courts, which could only be achieved

15  through deception. In other words, if the Principals assigned the copyright to

16  themselves, brought suit in their own names, and disclosed that they had the sole

17  financial interest in the suit, a court would scrutinize their conduct from the outset.

18  But by being less than forthcoming, they defrauded the Court. They anticipated that

19  the Court would blindly approve their early-discovery requests, thereby opening the

20  door to more settlement proceeds.

21         The Principals also obfuscate other facts, especially those concerning their

22  operations, relationships, and financial interests. The Principals' web of

23  disinformation is so vast that the Principals cannot keep track—their explanations of

24  their operations, relationships, and financial interests constantly vary. This makes it

25  difficult for the Court to make a concrete determination.

26         Still, the Court adopts as its finding the following chart detailing Plaintiffs'

27  relationships. Though incomplete, this chart is about as accurate as possible given

28  Plaintiffs' obfuscation.



As for Van Den Hemel, Lutz, and Hansemeier, they are not without fault even though they acted under orders from the Principals. They were not merely assimilated; they knowingly participated in this scheme, reaping the benefits when the going was good. Even so, their status as non-attorneys *and* non-parties severely limits the sanctions that could be levied against them.

Despite these findings, the Court deems these findings insufficient to support a large monetary sanction—a seven-digit sanction adequate to deter Plaintiffs from continuing their profitable enterprise. Even if the Court enters such a sanction, it is certain that Plaintiffs will transfer out their settlement proceeds and plead paucity. Yet Plaintiffs' bad-faith conduct supports other more fitting sanctions.

/ / /

1    First, an award of attorney's fees to Defendants is appropriate. This award
2 compensates them for expenses incurred in this vexatious lawsuit, especially for their
3 efforts in countering and revealing the fraud perpetrated by Plaintiffs.

4    So far, only Morgan Pietz and Nicholas Ranallo have appeared.[4] Upon review,
5 the Court finds Pietz's expenditure of 120.5 hours at an hourly rate of $300 reasonable
6 based on his experience, work quality, and quantity of necessary papers filed with the
7 Court. (ECF No. 102.) Although many of these hours were spent after the case was
8 dismissed, these hours were spent in connection with the sanction hearings—time well
9 spent. Similarly, the attorney's fees and costs incurred by Ranallo also appear
10 reasonable.

11    Therefore, the Court awards attorney's fees and costs in the sum of $40,659.86
12 to Doe: $36,150.00 for Pietz's attorney's fees; $1,950.00 for Ranallo's attorney's fees;
13 $2,226.26 for Pietz's costs; and $333.60 for Ranallo's costs. As a punitive measure,
14 the Court doubles this award, yielding $81,319.72.[5] This punitive multiplier is
15 justified by Plaintiffs' brazen misconduct and relentless fraud. The Principals, AF
16 Holdings, Ingenuity 13, Prenda Law, and Gibbs are liable for this sum jointly and
17 severally, and shall pay this sum within 14 days of this order.

18    Second, there is little doubt that that Steele, Hansmeier, Duffy, Gibbs suffer
19 from a form of moral turpitude unbecoming of an officer of the court. To this end, the
20 Court will refer them to their respective state and federal bars.

21    Third, though Plaintiffs boldly probe the outskirts of law, the only enterprise
22 they resemble is RICO. The federal agency eleven decks up is familiar with their
23 prime directive and will gladly refit them for their next voyage. The Court will refer
24 this matter to the United States Attorney for the Central District of California. The
25 will also refer this matter to the Criminal Investigation Division of the Internal

26

---

[4] They appeared on behalf of the Doe Defendant in the case *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

[5] This punitive portion is calculated to be just below the cost of an effective appeal.

1  Revenue Service and will notify all judges before whom these attorneys have pending
2  cases. For the sake of completeness, the Court requests Pietz to assist by filing a
3  report, within 14 days, containing contact information for: (1) every bar (state and
4  federal) where these attorneys are admitted to practice; and (2) every judge before
5  whom these attorneys have pending cases.

6       *4.     Local Rule 83-3 sanctions*

7       For the same reasons stated above, the Court will refer Duffy and Gibbs to the
8  Standing Committee on Discipline (for this District) under Local Rule 83-3.

9  **V.   CONCLUSION**

10       Steele, Hansmeier, Duffy, Gibbs, Prenda Law, AF Holdings, and Ingenuity 13
11  shall pay, within 14 days of this order, attorney's fees and costs totaling $81,319.72 to
12  Doe. The Court enters additional nonmonetary sanctions in accordance with the
13  discussion above.

14       **IT IS SO ORDERED.**

15       May 6, 2013

16

17       _____

18               **OTIS D. WRIGHT, II**
         **UNITED STATES DISTRICT JUDGE**

19
20
21
22
23
24
25
26
27
28