IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL DUFFY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cv-1569 |
| | ) | Judge: Honorable John W. Darrah |
| PAUL GODFREAD, ALAN COOPER, and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM**

Plaintiff, pursuant to Federal Rule of Civil Procedure 12(b)(6) and other governing law, as and for his Motion To Dismiss the amended Counterclaim ("Counterclaim") of Defendants Godfread and Cooper (collectively referred to for purposes of this Motion as "Defendants'), states as follows:

**INTRODUCTION**

The Defendants and their counsel have shown both here, and in a related (but not consolidated) lawsuit against them (13-cv-4341, also pending in this Court), that they are going to litigate this case from the gutter. The number of examples of name-calling, *ad hominem* attacks, baseless sanctions motions and utter falsehoods in their papers is breathtaking. In their Counterclaim, Defendants repeat pejoratives *ad nauseum* as if repetition is a substitute for significance. But their allegations are to a great extent implausible and baseless conspiracy theories; their name-calling unprofessional and unworthy of a Federal litigant; and, as set forth in this Motion to Dismiss, they fail to articulate a single basis upon which the Court may grant them relief. Indeed, their Counterclaim is by any reasonable assessment incompetent (the paragraphs

are not numbered for much of the document, and one of the Counterplaintiffs joining it – Godfread, a licensed attorney -- fails to allege facts suggesting that he has standing to claim anything). While it is tempting to call Defendants and their counsel out on their misrepresentations to this Court, it should be unnecessary to reach that point because their Counterclaim should be dismissed.

While styled a "Counterclaim," the document resembles nothing other than an empty screed. The Defendants, consistent with the allegations in the Complaint, provided the document to various vigilante Internet "blog" posters (such as those that are Doe defendants in this case) devoted to harassing those who seek to enforce copyright property rights, the day they filed it. So as a diatribe it has received much exposure among pro-infringement enthusiasts and is readily available worldwide to anyone with a computer, despite the fact that it is legally infirm. But it fails on many levels. Perhaps most obviously, Counterplaintiff Godfread fails to allege relevant facts relating to himself, and he cannot prevail under any theory for liability. Because this is his second bite at the apple (Godfread is an attorney, represented by two other attorneys, and one of them is licensed in Illinois) and Godfread still cannot allege facts that could form the basis for liability, the Court should dismiss his Counterclaim with prejudice.

And all of the claims that Cooper alleges fail. To a great extent, they are based upon statements made in court papers (by many separate entities), and as such are barred by the litigation privilege. The remaining claims only exist through the use of the defective device of attributing conduct to separate, distinct entities, and then mixing-and-matching those actions and then attributing them to the Plaintiff. The result is an attempt to create an artificial Plaintiff which they seek to hold vicariously liable for the real-world Plaintiff in this case. The fact that Defendants are forced to introduce at least twelve (12) separate and distinct entities into the

equation, allege conduct on the part of each of them, and then attribute that conduct to Plaintiff demonstrates that they do not – and cannot –allege a claim against Plaintiff for any real world conduct.

## ARGUMENT

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [to support plaintiff's claims]." *Id.*

Thus, before *Twombly* and *Iqbal*, a complaint could not be dismissed unless it appeared "beyond doubt" that a plaintiff could prove "no set of facts in support of his claim which would entitle him to relief." *Wright v. Gen. Mills Inc.*, 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009). That standard no longer applies. Now, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Peviani v. Hostess Brands, Inc.,* 750 F. Supp. 2d 1111, 1115 (C.D. Cal. 2010) (citing *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)).

As set forth below, Defendants' Counterclaims against Plaintiff fall far short of what is needed to state a claim under *Twombly* and *Iqbal*.

## I.　　NO VALID CLAIMS ALLEGED ON BEHALF OF GODFREAD.

The Counterclaim was filed on behalf of both named Defendants, one of whom, Godfread, is an attorney who is being represented by two other attorneys in this case. Godfread makes no allegations relating to himself showing that he has a valid counterclaim. (*See generally,* Counterclaim, ECF No. 36.) Godfread simply seeks to stand in the shoes of Cooper for purposes of alleging claims.

A party's lack of standing deprives an Article III court of its jurisdiction to decide the merits of an underlying case. *See, e.g., United States v. AVX Corp.,* 962 F.2d 108, 113 (1st Cir. 1982). Standing is therefore a preliminary issue which determines whether the court has the power to decide the claim. *Id.* The party must have suffered an injury in fact, that is "fairly traceable" to the opponent's conduct, and which the court can redress. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1982). The party invoking federal jurisdiction to assert a claim has the burden of establishing standing to bring a claim. *Id.*

Here, Defendant Godfread has not alleged that he has suffered cognizable damages for which Plaintiff may be liable. As such, he has no logical connection to the Counterclaims, and he lacks standing to bring any claim alleged in it. This is Godfread's second go-around at trying to allege a claim in this case, and he has missed both times. He does not allege an injury-in-fact, or conduct fairly traceable to Plaintiff, and lacks standing to bring any claim. Because the three attorneys seeking to advance his interests have twice been unable to assert any claim on his behalf, the Court should dismiss the Counterclaim as it pertains to him with prejudice.

### II. NO VALID CLAIM FOR RELIEF ON BEHALF OF COOPER.

None of Defendant Cooper's counterclaims survive even a cursory application of governing law.

**A. The False Attribution Device Fails.**

Defendants make numerous and often factually baseless against at least the following non-parties to this suit: Prenda Law, Inc.; Steele Hansmeier, PLLC; John Steele, Paul Hansmeier, Peter Hansmeier, Alan Mooney; Alpha Law Firm; Duffy Law Group; Law Offices of Paul Duffy; Anti-Piracy Litigation Group, Inc.; AF Holdings, LLC; and Ingenuity 13, LLC. Defendants then use the device of collapsing those twelve (12) separate entities into a single, fictitious entity which they seek to swap out for the actual, named Plaintiff. Defendants have failed to allege facts to support such a bewildering matrix of vicarious liability among all those unrelated and separate entities, much less a basis to attribute all of their alleged conduct to Plaintiff. And their attempts are nonsensical. Indeed, Cooper's complaint is based upon his claims that John Steele (who is not a party here) misappropriated the use of his signature. While Cooper may (and has) filed a claim against Steele alleging damages for that, he has not articulated a basis for how Plaintiff can be liable for Steele's alleged conduct. The only ground alleged is that Steele conducted certain activities, and then Counterplaintiffs simply substitute Plaintiff's name for Steele's in the specific counts in the Counterclaim.

As the Court noted in dismissing the first Counterclaim, there are still no claims of conduct directly attributable to Plaintiff that can give rise to liability, and the Counterclaim should be denied on that basis.

**B. Claims Barred By The Litigation Privilege.**

As set forth above, Defendant has asserted few, if any, allegations of actual conduct on the part of Plaintiff. And they have failed to allege a valid basis as to why Plaintiff should be held liable for the conduct they attribute to their twelve-entity construct whom they seek to substitute as the Plaintiff. Those few actions that Defendants seek to attribute to Plaintiff are not a valid basis for any claim because they were statements or actions taken in connection with lawsuits pending in Federal courts, and there is no basis for liability on those grounds.

The litigation privilege bars claims against attorneys, and their clients, arising from actions taken in connection with initiation and prosecution of a lawsuit. The privilege as it has developed in Illinois is quite broad. *See Joan M. Steffes v. Stepan Company*, 144 F.3d 1070 (7th Cir. 1998). There is a litigation privilege that protects "communications preliminary to a proposed judicial proceeding." Restatement (Second) of Torts § 586 (1977). Illinois courts recognize that section of the Restatement. *Edelman, Combs & Latturner v. Hinshaw & Culbertson,* 338 Ill. App. 3d 156, 788 N.E.2d 740, 748 (4th Dist. 2003). While a "state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action", *Steffes v. Stepan Co.,* 144 F.3d 1070 (7th Cir. 1998) (collecting cases)), there is no claim arising under federal law in the Counterclaim. And—separate and apart from this limitation—Illinois law limits the scope of the privilege to defamation or false light actions, and defamation is a claim in both the Complaint and the Counterclaim. *See Zdeb v. Baxter Int'l, Inc.,* 297 Ill. App. 3d 622, 697 N.E.2d 425, 430 (1998) (noting that the Restatement is specifically entitled "Defamation: Defenses" and states only that it "protects the attorney from liability *in an action for defamation*") (emphasis in original); *see also Scheib v. Grant,* 22 F.3d 149, 156 (7th Cir. 1994 )("[I]n Illinois ... anything said or written in a legal proceeding ... is protected by an

absolute privilege against defamation actions.") (internal quotations omitted). Defendants' Counterclaim is therefore barred to the extent the conduct they complain of falls within the Illinois litigation privilege.

      C.      **Anti-SLAPP Claim In Count I Fails.**

Counterplaintiffs in Count I seek a "declaratory judgment" under the Minnesota anti-SLAPP statute. However, the Court has already held in denying their anti-SLAPP motion to dismiss that the allegations in Plaintiff's Complaint pertained to comments not designed to procure a favorable governmental outcome, and thus that the anti-SLAPP statute did not apply. Nothing in Plaintiff's Complaint has changed, and Counterplaintiffs' re-assertion of a claim that the Court has already rejected is baseless. The statements attributed to Counterplaintiffs in the Complaint are not "lawful … speech that is genuinely aimed in whole or in part at procuring government activity." The speech "constitutes a tort" that is outside the protections in the Minnesota anti-SLAPP statute. Minn. Stat. § 554.03. The Minnesota anti-SLAPP statute immunizes from liability "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action . . . unless the conduct or speech constitutes a tort or a violation of a person's constitutional rights." Minn. Stat. 554.03. Under the statute, speech or conduct falling within that description is public participation. Minn. Stat. 554.01. But it is clear that the statute does not provide immunity to statements "intentionally aimed at audiences *having no connection with the public . . . controversy*." *Freeman v. Swift*, 776 N.W.2d 485 (Minn. Ct. App. 2009) (emphasis added).

Minnesota's anti-SLAPP law allows a defendant who is the subject of a claim that "materially relates to an act . . . that involves public participation" to file a motion to dismiss or strike the complaint. Minn. Stat. 554.02. Discovery activities are placed on hold from the time

7

the motion is filed until not only the trial court has ruled on it but until all appeals regarding it have been resolved.

None of the statements attributed to the Defendants in the Complaint, irrespective of whether they are named, can be construed as speech to procure a favorable outcome. The statements attributed to the named Defendants, as the Court already held in dismissing the first Counterclaim, appeared on blogs before they were known to be in Court filings. And as set forth in the Complaint, the statements, virtually always anonymous, are clearly and expressly designed to cause harm to Plaintiff as a consequence of enforcing copyrights. Among other things, Plaintiff has alleged that Defendants' statements include those that, among other things, accuse state that Plaintiff and other representatives of a law firm , were engaged in a "scam" and "criminality;" being "crooks;" engaging in "blackmail;" being "crooked;" engaging in "criminal acts;" and being "seasoned fraudsters." A defendant declared that Prenda's attorneys were "like Dahmer and Bundy," two mass murders. Compl. at ¶102.

The comments attributed to Defendants, and incorporated by reference into the Complaint, indicate that certain of the Defendants have stated an intention to cause harm to Plaintiff. Defendants have continued unabated in their conduct, falsely accusing Plaintiff of many things with the stated intention of harming his business, his relationships with clients, and the public reputation of anyone performing work with the Plaintiff. Compl. at ¶2, *see generally* ¶¶ 29-99.

The statements attributed to Defendants in the Complaint bear no relationship, whatsoever, with any attempt to procure a favorable government result. They are what certain Defendants have admitted they are: efforts to defame and harm Plaintiff financially and

professionally. As the Court has already held, there is no immunity from such statements under the Minnesota or any other State's anti-SLAPP statute.

### C. Invasion Of Privacy Claim Fails.

In Count II, Counterplaintiffs seek to assert a claim for invasion of privacy for the alleged misappropriation of Cooper's name. The claim fails because (i) the actions alleged are attributed to a non-party, Steele, and not Plaintiff; and (iii) Counterplaintiffs have failed to plead the elements of invasion of privacy.

The elements of misappropriation in Illinois law are: an appropriation, without consent, of one's name or likeness for another's use or benefit. *See Dwyeer v. American Express Co.,* 273 Ill. App. 3d 742, 652 N.E.2d 1352 (1st Dist. 1995), citing Restatement (Second) of Torts @ 652C (1977); *Leopold v. Levin,* 45 Ill. 2d 434, 444, 259 N.E.2d 250, 256 (1970). "This branch of the privacy doctrine is designed to protect a person from having his name or image used for commercial purposes without consent." *Id., citing Douglass v. Hustler Magazine* (7th Cir. 1985), 769 F.2d 1128, *cert. denied* 475 U.S. 1094 (1986) (finding defendant appropriated the value of model's likeness when it published pictures of her without consent).) As set forth in the Restatement, the purpose of this tort is to protect the 'interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness." (Restatement (Second) of Torts @ 652C, Cmt. a (1977).)

A successful suit under an appropriation theory must be based on use of the plaintiff's persona, not just a coincidental use of the same name; liability exists if a defendant, "appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness."

Restatement (Second) of Torts § 625C cmt. c (1977). But the Restatement carefully limits the application of the tort:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded.

*Id.* 625C cmt. D (1977).

The illustrations of that tort are not even remotely equivalent to what Counterplaintiffs allege. The tort covers action such as the publication of a person's photograph without consent in an advertisement; operating a corporation named after a prominent public figure without the person's consent; impersonating a man to obtain information regarding the affairs of the man's wife; and filing a lawsuit in the name of another without the other's consent. Restatement (Second) of Torts @ 652C, Comment b (1965).

None of that is an issue here. First, Counterplaintiff alleges that nonparty Steele misappropriated the name. Their sleight-of-hand in seeking to hold Plaintiff liable for the acts of another fails. Counterplaintiff alleges that Plaintiff used the name "Alan Cooper" without his express permission, but he does not allege that Plaintiff used the name in order to leverage Plaintiff's "reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Id.* Furthermore, Counterplaintiffs cannot allege that any entity derived a benefit from the use of Cooper's name, because as a matter of law there is no such benefit. The signature on a copyright acknowledgement form is not necessary to affect a transfer

of a copyright. *See* 17 U.S.C. § 204; *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990) ("The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do."). And as another district court held regarding the same copyright Counterplaintiffs complain about:

> The written copyright assignment recites that it is between the original copyright owner, Heartbreaker Films, and Plaintiff here, AF Holdings, LLC. While the assignment is signed by a representative of the assignors, it is not signed by a representative of the assignee, AF Holdings, LLC. Instead, it is signed by a representative of AF Films, LLC. As the law requires only that the assignment be signed by the assignor and not the assignee . . . this inconsistency does not prevent a prima facie showing of copyright ownership.

*AF Holdings LLC v. Does 1-96*, No. 11-cv-3335-JSC (N.D. Cal. Nov. 22, 2011), ECF No. 29 at 5 n.1 (internal citations omitted).

And as Judge Kendall in this District held earlier this year, "[W]here there is no dispute between the copyright owner and the transferee about the status of the copyright, `it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'" *Malibu Media, LLC v. Reynolds,* Cas. No. 12-cv-66772 (N.D. Ill. Mar. 7, 2013, ECF #51), (citing *Billy-Bob Teeth,* 329 F.3d 586, 592-93 (7th Cir. 2003) (quoting *Imperial Residential Design, Inc. v. Palms Development Group, Inc.,* 70 F.3d 96, 99 (11thCir. 1995)).

Counterplaintiffs have failed to allege that Plaintiff used the signature for a public purpose. They lack allegations sufficient to show that Plaintiff ever portrayed Copper as an officer or director of any entity. Finally, Count II is defective because it does not allege that Cooper suffered any damages from the use of his name.

**D. Conspiracy Claim Fails.**

Count III fails to allege a valid conspiracy claim.

Initially, Counterplaintiffs have appeared to have pled themselves out of court with respect to this count, because they have failed to properly allege where or how Plaintiff, an individual, ever used Cooper's name to suggest he is an "officer or director" of any entity. The absence of such allegations undermines Count III because the object of the alleged conspiracy does not exist. The only alleged use of the name is on the legally unnecessary acknowledgement on a copyright assignment form. Counterdefendants allege that a nonparty procured that signature, and the nonparty disputes that it was unauthorized. Furthermore, Counterplaintiff fails to allege how or whether Plaintiff entered into an agreement to obtain that signature. Indeed, Counterplaintiffs simply use the term "agreement" and attribute conduct they allege nonparty Steele conducted onto nonparty Prenda; then, without alleging any valid basis for vicarious liability, they seek to hold Plaintiff responsible for liability they want Prenda to have inherited from Steele. There are no factual allegations sufficient to allege that Plaintiff entered into any agreement with any entity to use Cooper's name. Counterplaintiff alleges instead that in mid-2011—before Prenda came into existence—Steele procured Cooper's signature on an assignment form.

There is no ground to allege that Plaintiff inherited third-generation vicarious liability for acts of a non-party, particularly where the second party in that chain did not exist when the signature was allegedly improperly procured.

**E. Defamation Count Fails.**

Count IV for defamation fails as a matter of law because it rests entirely on (inaccurately-cited) statements made in court filings in other proceedings. As set forth above, the litigation immunity doctrine provides an absolute privilege for claims of defamation for such statements, and Count VI fails as a matter of law to state a cause of action.

12

**F. Abuse of Process Claim Fails.**

The elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 966 (1972). In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment. In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183, 790 N.E.2d 925 (2003). The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law. *Id.,* 339 Ill. App. 3d at 183, 790 N.E.2d 925.

Counterplaintiffs simply parrot those elements in Count V, and there are no valid allegations to support them. While they allege an "improper purpose" there is not a single factual allegation showing that Plaintiff's purpose is other than what is stated in the Complaint: to stop Defendants from defaming him and to pay him damages. Furthermore, the fact that Plaintiff and Prenda filed separate lawsuits against the same Defendants does not, and cannot by itself, suggest an improper purpose. Indeed, Plaintiff filed this action in the Circuit Court of Cook County, where Plaintiff lives and resides. The harm from Defendants' defamatory and otherwise tortious conduct occurred in Cook County. And Prenda filed its defamation actin in St. Clair County, Illinois, where Counterplaintiffs and others engaged in substantial defamatory conduct, and where Prenda suffered damages as a result. Indeed, Defendants expended considerable time and effort to defame Prenda in St. Clair County, in an effort to influence the outcome of litigation then-pending there. It bears noting that, as shown in exhibits to the

Complaint, when Defendants did not obtain the desired outcome in St. Clair County, one or more of them wrote that the Judge in the case was corrupt.

The Court denied Defendants' motion to dismiss the Complaint, and there is nothing to suggest that Plaintiff has not pled valid causes of action. While Counterplaintiffs find it convenient to allege that separate and distinct entities should be treated as one, they have not alleged facts sufficient to establish the sweeping levels of vicarious liability that they need for their Counterclaim to survive. And the fact that two entities filed suit in places where different damages arose does not by itself amount to "malicious prosecution" of any entity.

## CONCLUSION

For the reasons stated in the Motion, the Court should dismiss the Counterclaim, and grant Plaintiff any and other relief that it deems to be reasonable and appropriate under the circumstances.

        Respectfully submitted,

        PAUL DUFFY

        By:  /s/ Paul A. Duffy
            One of Its Attorneys

Paul A. Duffy
2 N. LaSalle St., Suite 1300
Chicago, IL 60602
Telephone: (312) 952-6136
Fax: (312) 346-8434
E-mail: pduffy@pduffygroup.com

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on October 22, 2013, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).


                                              /s/ Paul Duffy
                                              Paul Duffy