UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL DUFFY, | Case No. 1:13-cv-01569 |
| Plaintiff, | Honorable John W. Darrah |
| v. | Removed from:<br>The Circuit Court of Cook County, IL<br>No. 13-L-001656 |
| PAUL GODFREAD, ALAN COOPER, | Consolidated with:<br>Prenda Law v. Godfread, et al, No. 13-cv-04341 (N.D. Ill.) |
| and JOHN DOES 1-10, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF PAUL DUFFY'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS**

## I. INTRODUCTION

Defendants Paul Godfread and Alan Cooper ("Defendants") respectfully submit this response in opposition to Duffy's motion to dismiss Defendants' counterclaims (ECF No. 43).

## II. RELEVANT FACTS & PROCEDURAL HISTORY

While this action was pending, the Prenda attorneys were sanctioned in a case whose findings of fact about them include that they created and operated shell companies solely to sue people and shield themselves from liability, and stole the identity of Steele's caretaker, Alan Cooper, forging a copyright assignment in his name to create a non-existent corporate officer for AFH:

1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

1

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals.

4. [S]ettlement funds [from copyright infringement lawsuits] resided in the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13.

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper … [They] fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.

11. Plaintiffs[1] have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies.

Order Issuing Sanctions, Ingenuity 13 LLC v. John Doe, Case No. 12-cv-08333-ODW-JC ("Ingenuity 13"), ECF No. 130 pp. 3-5 (C.D. Cal. entered May 6, 2013) ("Ingenuity 13 Order"). On May 14, 2013, Defendants included the Ingenuity 13 Order as an exhibit in their Opposition to Dismiss Counterclaims. ECF No. 16; ECF No. 16-2.

Informed in part by the Ingenuity 13 Order, other federal courts have taken a closer look at cases brought by the Prenda attorneys and have adopted the Ingenuity 13 Order's findings of an "alter ego relationship" or as Plaintiff phrases it "a bewildering matrix".

A recent ruling not only incorporated Ingenuity 13 Order's factual findings, but made an additional eleven independent findings. AF Holdings LLC v. Navasca, No. 12-cv-02396-EMC, ECF No. 116 pp. 5-9 (N.D. Cal. 2013) ("Navasca R&R") (Attached as Exhibit A). On September

---

[1] The Ingenuity 13 court used the term "Plaintiffs" to cover the nominal plaintiffs, including AFH, as well as "related entities, individuals, and attorneys that collaborated in the underlying scheme." *Ingenuity 13* Order p. 1 n.1.

16, 2013, Defendants included the Navasca R&R as part of their Amended Counterclaims. ECF No. 36; ECF No. 36-1. In pertinent part, the additional findings included:

1. … For all material purposes here, Prenda Law, Inc. is a mere continuation of Steele Hansmeier. … Brett Gibbs testified that Hansmeier and Steele continue to perform the same roles at Prenda that they had performed at Steele Hansmeier, and that business continued to operate in the same manner.

2. Gibbs testified that Steele Hansmeier and Prenda Law originally represented actual producers of adult films in copyright infringement cases. In 2012, Steele told Gibbs that he wanted to become a company that would solely enforce copyright claims for its own intellectual property holdings. Steele told Gibbs that AF and Ingenuity 13 would be owned by "Livewire" and would file their own copyright infringement cases. Gibbs testified that, as time went on, he was instructed to file more cases on behalf of AF and Ingenuity 13 than any other producer of adult films which Steele and Hansmeier had previously represented. Gibbs further testified that it was "common practice" for AF to file lawsuits and obtain summonses, while it was rare for the other producers he represented.

3. Gibbs was "Of Counsel" for Prenda Law, Inc., and represented AF in this action until February 26, 2013, when Duffy substituted in as counsel. See Doc. No. 64. Gibbs testified that Steele and Hansmeier directed his litigation activities in cases filed by AF, including this one. See also Doc. No. 94 (Gibbs Decl.) at ¶ 3. … Gibbs testified that he conferred weekly with Steele and Hansmeier to discuss active AF cases. Navasca introduced evidence of hundreds of phone calls between Gibbs, Steele and Hansmeier starting in December 2011 and ending in March 2013, supporting this testimony (Defendant's Exs. A & B). Gibbs confirmed that the phone numbers appearing in the exhibits were his and the phone numbers of Steele and Hansmeier. Gibbs also highlighted several phone calls with Hansmeier on November 30, 2012, which coincided with the date of the Case Management Conference held in this matter (see Doc. No. 21), and confirmed that he spoke with Hansmeier about the case. …

7. Navasca introduced evidence of two audio recordings, which were played during the hearing. The first was a recording produced by GoDaddy.com, which registered the domain name for dangerousxxx.com. See Defendant's Ex. D. The caller identifies himself in the recording as "Alan Cooper" and asks the customer service representative for help in resetting the password to his account; he eventually asks the customer service representative to send the password reset information to johnlsteele@gmail.com, an address on the account.[2] Gibbs testified that the voice of the caller is in fact that of Steele, whom he knows

---

[2] Furthermore, the physical address for the customer was 4532 E Villa Theresa Dr.—an address that is linked to Mr. Steele's sister and Anthony Saltmarsh. ECF No. 16-3. *See also*, ECF Nos. 16-4 & 16-5 (Hansmeier, using his Alpha Law address, and Steele, using Prenda's Florida address, registered and paid for several domains associated with Prenda Law. Records kept by Go Daddy show Steele and Hansmeier shared control of the accounts and audio recordings in Defendant's possession have both men calling in.).

personally and whose voice he recognizes. Gibbs testified he had used that email address from his Prenda Law firm account to contact Steele. In the second recording, the caller identifies himself as "Mark Lutz," but once again, Gibbs testified that the caller was in fact Steele. Defendant's Ex. E. …

8. Based on Alan Cooper's testimony, which the undersigned admitted into evidence, and on the evidence that Steele impersonated Cooper in the GoDaddy recording, the undersigned finds that Steele impersonated Cooper to further the copyright litigation scheme. …

Id. See also, Navasca, ECF No. 120 p. 5 (adopting the magistrate judge's findings and noting "collateral estoppel bar[s] the Plaintiff and its aliases from relitigating … findings on these issues.") (Attached as Exhibit B).[3]

### III. FACTUAL CONTRADICTIONS

Since the initial filing of the Complaint against the Defendants, Plaintiff has altered his perception of certain facts.

In its motion to dismiss, Plaintiff asserts:

"The Defendants and their counsel have shown both here, and in a related (but not consolidated) lawsuit against them (13-cv-4341, also pending in this Court)."

ECF No. 43 p. 1 Which is an odd thing to say given that on June 28, 2013, Plaintiff consented to the consolidation of the two cases.

"[Duffy] having advised the Court that there is no objection, defendants' motion to consolidate and reassign 13 C 4341, [Prenda] Law v. Godfread, pending before Judge Kennelly [19] is granted."

ECF No. 26 (Minute Entry).

### IV. STANDARD OF REVIEW

Courts apply the same legal standard of review for motions to dismiss counterclaims as they do for motions to dismiss complaints. McLaughlin v. Chi. Transit Auth., 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the

---

[3] See also, *AF Holdings, LLC v. Sandipan Chowdhury,* No. 12-cv-12105, ECF No. 34 (D. Mass. Oct. 22, 2013) (entering final judgment for costs and attorneys' fees, totaling $64,180.80 and noting that AF Holdings is an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy and Paul R. Hansmeier, and its paralegal, Mark Lutz).

sufficiency of the counterclaim, not to decide the merits of the case. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990); Anchorbank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). Pursuant to Rule 8(a) (2), a counterclaim must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a court may grant a motion to dismiss under Rule 12(b)(6) only if the counterclaim lacks "enough facts to state a claim to relief that is plausible on its face" and that "raises a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). See also, Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

A sufficient counterclaim must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, at 555; Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618-19 (7th Cir. 2007). The counterclaim must "present a story that holds together." Swanson, at 404; Smith v. Medical Benefit Adm'rs Group, Inc., 639 F.3d 277, 281 (7th Cir. 2011). These requirements ensure that a counter-defendant receives "fair notice of what the … claim is and the grounds upon which it rests." Twombly, at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In evaluating a motion to dismiss a counterclaim, a court must accept all well-pleaded allegations as true and draw all reasonable inferences in a counter-plaintiff's favor. Fed. R. Civ. P. 12 (b)(6); Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). See also, Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002); Cole v. Milwaukee Area Tech. Coll. Dist., 634 F.3d 901, 903 (7th Cir. 2011).

Thus, a counterclaim will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, at 679 (quoting Twombly, at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 678; Tullis v. Dozier, No. 12-cv-107, 2013 U.S. Dist. LEXIS 57581, *3-4 (S.D. Ill. Apr. 23, 2013).

While Plaintiff may find it difficult to articulate why a particular case falls on one side or the other of Twombly, the overriding principle of the pleading standard is clear: notice pleading is still all that is required, and a plaintiff need "provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo, at 1083. The Defendants' counterclaims satisfy this standard and therefore are not subject to dismissal.

Plaintiff, relying on its misunderstanding of the notice pleading standard set forth in Twombly, argues at length about all the facts that the counterclaims do not allege. For example, "And the Facts do not, directly or even indirectly, allege any conduct on the part of Plaintiff sufficient to state a cause of action against it." ECF No. 9, p.4. But that tactic of argument misses the mark; the focus of a motion to dismiss is on what the counterclaims say, not on what they don't say. See, Doe v. Smith, 429 F.3d 706, 708 (7th Cir. 2005) ("Any district judge … tempted to write 'this complaint is deficient because it does not contain …' should stop.") See also, Twombly, at 569 n.14 (rejecting any suggestion that the Supreme Court was subjecting all complaints to the particularity requirements of Fed. R. Civ. P. 9); Leimkuehler v. Am. United Life Ins. Co., No. 10-cv-00333, 2011 U.S. Dist. LEXIS 44490, *13-14 (S.D. Ind. Apr. 25, 2011).

By arguing to the contrary, Plaintiff seeks to impose a pleading standard that is inconsistent with notice pleading. The Defendants have given Plaintiff such notice in this case, and that is all that notice pleading requires of them. Iqbal, 1084-85. Accordingly, Plaintiff's motion to dismiss the counterclaims should be denied.

## V. ARGUMENT

A. Godfread has Standing to Assert his Counterclaims.

A plaintiff must meet the constitutional requirements for standing: (1) the party must have personally suffered an actual or threatened injury caused by the defendant's illegal conduct; (2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one

that is likely to be redressed by a favorable decision. United Transp. Union v. Surface Transp. Board, 183 F.3d 606, 611 n.2 (7th Cir. 1999); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Notably, Plaintiff has, throughout this litigation, asserted that Godfread, as Cooper's attorney and on whose behalf and for whose benefit he filed the Minnesota complaint, is liable in part under an agency theory. Complaint, ECF No. 6-7 pp. 2-3 ¶¶ 67 ("Godfread has made allegations in a complaint filed in the District Court for the Fourth Judicial District of Minnesota that are patently false."); ("Godfread represented to Plaintiff that certain of the false and defamatory statements referenced in Paragraph 6 derived from information provided to him by Cooper."). In defending against the counterclaims, Plaintiff once again seeks to backpedal in its analysis by severing the agency link between an attorney and his client and to differentiate between harm to an agent and harm to a principal.

Godfread has asserted counterclaims under Minn. Stat. §554.01-.05, the Minnesota anti-SLAPP statute, and abuse of process. ECF No. 36 pp. 14-15, 18. In contending that Godfread lacks standing to assert his counterclaims, Plaintiff asserts that Godfread suffered no "cognizable damages" ECF No. 43 p. 4. As Godfread contends however, Plaintiff's filing the suits without a reasonable basis caused Godfread to incur substantial attorney's fees and costs to defend, or at the very least they were prepare to bear this expense in order to deal with Plaintiff's allegations. Kaye v. City of Milwaukee, No. 05-cv-982, 2009 U.S. Dist. LEXIS 12970 (D. Wis. 2009) ECF No. 36 pp. 13, 15. Plaintiff knew that Godfread would incur such costs of defense when it filed. This is an individual harm Godfread has standing to bring, and cannot be dismissed.

B.  The Litigation Privilege Affords Plaintiff no Grounds for Dismissal.

Plaintiff contends that the counterclaims for Defamation and Conspiracy are barred by absolute privilege under Illinois law for statements related to, made preliminary to, or made in

the course of judicial proceedings.[4] ECF No. 43 p. 6. "Illinois like other states recognizes an absolute privilege for statements in testimony or pleadings in a judicial proceeding." MacGregor v. Rutberg, 478 F.3d 790, 791 (7th Cir. 2007). The privilege applies to "communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding if the matter has some relation to the proceeding." Kurtz v. Hubbard, 973 N.E.2d 924, 928 (Ill. App. 2012) (internal quotation marks and alterations omitted). "[F]or a statement to qualify as a made in communications preliminary to a proposed judicial proceeding, the proposed proceeding must be contemplated in good faith and under serious consideration." Medow v. Flavin, 782 N.E.2d 733, 743(Ill. App. 2002) (emphasis added); See also, Horowitz v. Animal Emergency & Treatment Ctrs. of Chi., LLC, 2012 U.S. Dist. LEXIS 117079, *4 (N.D. Ill. Aug. 20, 2012); United States ex rel. Wildhirt v. AARS Forever, Inc., 2013 U.S. Dist. LEXIS 133982, *22-24 (N.D. Ill. Sept. 19, 2013).  Significant here, the privilege is an affirmative defense, see Kurtz, 973 N.E.2d at 928, and thus need not be anticipated in a complaint or counterclaim. See Richards v. Mitcheff, 696 F.3d 635, 638 (7th Cir. 2012) ("Judges should respect the norm that complaints need not anticipate or meet potential affirmative defenses."). At this stage of the case, and for the reasons stated repeatedly throughout the litigation and in Section II, supra, it is impossible to say Plaintiff's suit was "contemplated in good faith and under serious consideration." Medow, 782 N.E.2d at 743. Accordingly, dismissal under Rule 12(b)(6) on absolute privilege grounds would be inappropriate. See Horowitz, 2012 U.S. Dist. LEXIS 117079, *5 ("because plaintiffs are not required to plead facts that anticipate and defeat affirmative defenses, the Court denies Defendants' motion to dismiss based on the absolute litigation privilege"); cf. Villagrana v. Vill. of Oswego, 2005 U.S. Dist. LEXIS 21355, *5 (N.D. Ill. Sept. 22, 2005) (denying motion to dismiss based on absolute immunity because "[t]he degree to which the alleged defamatory statements were made within the scope of the Officers' official duties cannot be sufficiently assessed from the face of the Complaint").

---

[4] Defendants can't help but wonder to which other party in this litigation the privilege may properly apply to.

C. Defendants' anti-SLAPP Claims Stand.

As an initial matter and to the extent not already done, Defendants incorporate and adopt by reference the arguments made in ECF Nos. 11 & 18, if only to illustrate how Defendants have properly asserted a claim for defamation while Plaintiff has not.

In dismissing the Defendant's anti-SLAPP counterclaim, the Court stated:

> As the Counterclaim is presently constructed, it is unclear what role Duffy played in the claims asserted, particularly as none of the facts alleged in the Counterclaim allege actions specifically taken by Duffy. It is clear, however, Godfread and Cooper believe multiple other individuals and entities are involved, who have not been named as parties to this lawsuit.
>
> For that reason, Duffy's Motion to Dismiss the Counterclaim is granted. Godfread and Cooper's Counterclaim is dismissed without prejudice. However, they are directed to file an Amended Counterclaim within thirty days of this order.

ECF No. 28 p. 10.

In light of the factual findings above, supra pp. 1-4, Defendants are uncertain how much clearer it can become. While we may never know the specific, individual actions taken by Duffy, it does not preclude a finding that the acts of one member of the Plaintiff are attributable to all.

> "The Court further concludes that, once all of the ill-gotten gains are fully disgorged from AF Holdings, it would not be a wise use of the Court's limited resources to sua sponte attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, Dugas, Lutz, and Prenda Law, on the one hand—and the Plaintiff, AF Holdings, LLC., on the other. Such investigation can more effectively be conducted by federal and state law enforcement at the direction of the United States Attorney, the Minnesota Attorney General, and the Boards of Professional Responsibility in the jurisdictions where the attorneys involved in this apparent scheme are licensed to practice law."

AF Holdings v. John Doe, No. 12-cv-01445, ECF No. 67 p. 9 (D. Minn. Nov. 6, 2013) (Attached as Exhibit C).

1. Defendants' Underlying Action was "genuinely aimed ... at procuring favorable government action."

Defendants' complaint, on its face, demonstrates that it was "genuinely aimed ... at procuring favorable government action" and therefore falls within the protection of anti-SLAPP.

9

Minn. Stat. § 554.02(6); see Freeman v. Swift, 776 N.W.2d 485, 490 (Minn. Ct. App. 2009) (discussing statutory definitions of "genuinely," "aimed" and "procuring," and concluding that "the statute is unambiguous and can be construed based solely on the plain language used in the statute"); U.S. Const., amend. I. (public participation includes the right to "petition the Government for a redress of grievances," such as filing a complaint in good faith). "The [Minnesota] anti-SLAPP statute protects citizens' public participation in government." Id. at 488. It "applies to any motion in a judicial proceeding to dispose of a judicial claim on the grounds that the claim materially relates to an act of the moving party that involves public participation." Id., quoting Minn. Stat. § 554.02(1). "A district court must grant a motion to dismiss an action under this section 'unless the court finds that the responding party … has produced clear and convincing evidence that the acts of the moving party are not immunized from liability under section 554.03.'" Id. at 488-89, quoting Minn. Stat. § 554.02(3). Plaintiffs have "the burden of proof, of going forward with the evidence, and of persuasion on the motion." Minn. Stat. § 554.02(2). "The participation-in government immunity provided under [the anti-SLAPP statute] explicitly requires the nonmoving party to disprove the movant's immunity by clearly and convincingly establishing an underlying tort." Marchant Inv. & Mgmt. Co., Inc. v. St. Anthony West Neighborhood Org., Inc., 694 N.W.2d 92, 97 (Minn. 2005). Plaintiffs cannot meet "this high, statutorily imposed burden." Id., citing Swanlund v. Shiano Indus. Corp., 459 N.W.2d 151, 154 (Minn. App. 1990) (clear and convincing standard requires court to view evidence "through the prism of the substantive evidentiary burden").

Given the timing of Plaintiff's complaint and the speed with which it was filed, the high damages demand, and the duplicative nature of the action, Defendants have shown evidence of retaliatory intent. "[R]etaliatory intent may be inferred when a claim lacking merit is filed shortly after the exercise of protected rights." Hytel Group, Inc. v. Butler, 405 Ill. App.3d 113, 126 (2012). In analyzing a claim for retaliatory intent, it is appropriate for a court to consider the proximity in time between the protected activity and the filing of the complaint, and whether the

damages requested are reasonably related to the facts alleged and are a "good-faith estimate of the extent of the injury sustained."). Id. See also, Ryan v. Fox Television Stations, Inc., Nos. 1-12-0005, 1-12-0007 cons., (Ill. App. 2nd Div. October 23, 2012). Further evidence of Plaintiff's vindictiveness can be taken from their continued prosecution of its claims against the Defendants.

2. Plaintiff Fails to Show Defendants Made any False Statements about the Plaintiff.

As previously noted, like a common law fraud claim, defamation per se must be pled with a heightened level of precision and particularity. ECF No. 18 p.2 (citing Green v. Rogers, 234 Ill.2d 478, 492 (2009)).Precision and particularity are also necessary so that the defendant may properly formulate an answer and identify any potential affirmative defenses. Id. (citing Krueger v. Lewis, 342 Ill. App.3d 467, 470 (2003)). Plaintiff premises its allegations, in part, "upon the fact that [both written and oral] statements Godfread has made to Prenda [and its agents] have appeared in substantially the same form in Internet postings." ECF No. 3-1, ¶ 6 (emphasis added). Yet, Plaintiff proffers neither evidence nor explanation in its pleadings as to the form or content of these statements. No oral transcripts. No emails or letters in his possession. No "facts." Nothing attributable to Godfread or Cooper at all to show how "those statements have appeared, or been incorporated, in comments on the Internet sites referenced herein." he only instance of alleged defamation Plaintiff can attribute to Defendants are "certain false and defamatory statements" from "a complaint filed in the District Court for the Fourth Judicial District of Minnesota." ECF No. 3-1, ¶ 6. Yet once more, and befitting of its pleading practice, Plaintiff does not identify what in the Minnesota complaint is defamatory or where it appears on the websites complained of.

D. Cooper's Invasion of Privacy Claim is Properly Pleaded Because he has Pleaded Sufficient Facts to Show Plaintiff and its Agents Appropriated his Identity to Form and Operate Companies for Their Financial Gain and to Shield Their Unlawful Acts.

Plaintiff's misappropriation of Alan Cooper's name is the center of the universe of this litigation. It was the core of the litigation filed against Prenda and its principals in Minnesota,

which triggered retaliation in the form of the filing of the instant case filed by Duffy, the duplicate case filed by Duffy's law firm, Prenda, and a third lawsuit by Prenda principal John Steele in Florida. Using Cooper's name, Prenda advanced copyright infringement litigation across the country, collecting millions of dollars in settlements over the course of a couple of years. It takes a special brand of hubris to file a motion to dismiss claiming that this enterprise was not embarked upon for financial gain. Financial gain was its sole purpose.

1. The Forged "Sexual Obsession" Copyright Assignment was Used to Advance Litigation to Benefit Prenda and its Principals for Their Financial Gain.

Prenda and its principals used the forged "Sexual Obsession" assignment in litigation in the Northern District of Illinois and elsewhere[5]. That litigation was undertaken for the financial benefit of Prenda and its principals.

Duffy appears to be arguing that there was no benefit to Prenda or its principals, including Duffy himself, because the forgery was legally unnecessary to affect a transfer of the copyright. [ECF No. 43, p. 10-11]. The fact that Prenda and its cohort did not know enough about copyright law to know that the forgery was unnecessary at the time it was done does not change the fact that the forged instrument was used in litigation, bearing Alan Cooper's name, for the financial gain of Prenda and Duffy. Cooper's arguments regarding invasion of privacy and misappropriation of his name have nothing to do with whether the presence of Cooper's forged signature affected the validity of the assignment. The forgery was done and Duffy, Prenda and its principals benefitted financially from it.

Duffy also appears to be relying on Judge Kendall's ruling in Malibu Media, LLC v. Reynolds in support of what appears to be a theory about the transfer of a copyright. [ECF No. 43, p. 11]. However, the issue being addressed by Judge Kendall in Reynolds had nothing whatsoever to do with the validity of a document transferring a copyright. The issue Judge Kendall was addressing was whether a copyright transfer sufficiently transferred full rights for

---

[5] See, *Heartbreaker Productions, Inc. v. Does 1-71*; 1:11-cv-02860 (N.D. Ill. April 28, 2011).

the assignor to sue for pre-transfer infringements[6]. Reynolds, 2013 U.S. Dist. LEXIS 31228 at *11 (N.D. Ill., March 7, 2013).

Cooper has pled sufficient facts to advance his claim that Duffy (along with Prenda and its other principals) misappropriated his identity for their financial gain. There exists an increasingly vast body of legal opinions and court orders confirming that Mr. Cooper's name was forged, that he was the victim of identity theft, and that Duffy, Prenda and its principals were engaged in a vast corrupt enterprise designed to line their own pockets with the proceeds of copyright litigation brought, in many instances, under false and fraudulent pretenses. In light of that body of authority, it is astonishing that Duffy would resort to the preposterous argument that somehow Prenda's bungling and inept handling of the theft of Mr. Cooper's identity in any way affects the fact that it occurred or that it was perpetrated for the purpose of financial gain by Duffy, Prenda and its principals, John Steele and Paul Hansmeier.

E. Defendants have Stated a Claim for Abuse of Process.

To establish abuse of process, a plaintiff must show "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." Kumar v. Bornstein, 354 Ill.App.3d 159, 165 (2d Dist. 2004). Defendants need only to allege that Plaintiff had an ulterior purpose or motive and committed some improper act in using the legal process to pursue his case. See, Nieman v. Grange Mut. Ins. Co., citing Kumar, at 165.

In support of their abuse of process counterclaim, the Defendants allege that Plaintiff misused the legal process, by initiating the above captioned matters to achieve the following goals:

    a.  force Godfread and Cooper to expend funds on litigation costs and attorney fees in multiple proceedings;

---

[6] Counsel for Mr. Cooper is well informed on the *Reynolds* opinion, as was involved as defense counsel for a John Doe defendant in the case. It was Ms. Russell's motion to sever and dismiss that prompted the court to rule on the issues.

13

    b.  to discourage opposition in Godfread and Cooper's Minnesota action through delay and distraction; and

    c.  to intimidate Godfread and Cooper.

ECF No. 36 p. 18 ¶ 4.

"When Prenda, Duffy and their co-conspirators filed their respective state court actions, their goal was not to win on the merits but rather to a) force Godfread and Cooper to expend funds on litigation costs and attorney fees in multiple state court proceedings; b) discourage opposition in Godfread and Cooper's Minnesota action through delay, expense, and distraction; c) improperly seek discovery of third parties; and d) serve a vexatious or otherwise retaliatory purpose for the filing of the Cooper action."

Id., pp. 13-14.

When the allegations are taken as true, as they must be here, Defendants have plausibly alleged such a claim. Fed.R.Civ. P. 12(b)(6).

## VI. CONCLUSION

Plaintiff Duffy has failed to satisfy the requirements of Fed. R. Civ. P. 12(b)(6) by any measure. Defendants' amended counterclaims are more than sufficiently plead, and Duffy's attempts to misconstrue facts and law to show otherwise must fail.

Defendants respectfully request that the Court enter an Order denying Duffy's Motion to Dismiss Defendants' Amended Counterclaims, and grant in their favor any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Jason E. Sweet
Counsel for Defendants
Paul Godfread and Alan Cooper
Admitted Pro Hac Vice

Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
jsweet@boothsweet.com
BBO # 668596

/s/ Erin Kathryn Russell
Counsel for Defendants
Paul Godfread and Alan Cooper
The Russell Firm
233 South Wacker Drive, 84th Floor
Chicago, IL 60607
T: (312) 994-2424
F: (312) 706-9766
erin@russellfirmchicago.com
ARDC # 6287255

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 26, 2013, he caused the foregoing to be filed with the Court via its CM/ECF electronic filing system, thereby serving a copy on all parties of record.

/s/ Erin Kathryn Russell