UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PRENDA LAW, INC. and PAUL DUFFY, <br><br>Plaintiffs, <br><br>v. <br><br>PAUL GODFREAD, ALAN COOPER and JOHN DOES 1-10, <br><br>Defendants. <br><br>PAUL GODFREAD and ALAN COOPER, <br><br>Counterclaimants, <br><br>v. <br><br>PRENDA LAW, INC. and PAUL DUFFY, <br><br>Counterdefendants. | Case No. 13-cv-1569-JWD <br><br>Removed from: <br>No. 13-L-001656 (Cir. of Cook Cty.) <br><br>Consolidated with: <br>No. 13-cv-00207-DRH (S.D. Ill.) <br>No. 13-cv-04341-JWD (N.D. Ill.) |

**MOTION TO IMPOSE LIABILITIES OF PRENDA LAW, INC. UPON JOHN STEELE, PAUL HANSMEIER, AND PAUL DUFFY JOINTLY AND SEVERALLY**

Counterclaimants Alan Cooper ("Cooper") and Paul Godfread ("Godfread"), in support of this motion to impose any and all liabilities of Counterdefendant Prenda Law, Inc. ("Prenda") upon John Steele ("Steele"), Paul Hansmeier ("Hansmeier"), and Counterdefendant Paul Duffy ("Duffy") jointly and severally, state as follows.

**Relevant Procedural History**

Without Cooper's knowledge, Steele, Hansmeier, Duffy, and their law firm Prenda falsely held him forth as an officer of Ingenuity 13 LLC and AF Holdings LLC, two of their shell-company plaintiffs, in court filings across the country. *See* Doc. 6-1, 6-2 p. 8, 13-cv-1569.[1] In November 2012 attorney Godfread notified courts in Minnesota that his client Cooper had nothing to do with either shell company or their lawsuits. *See* Doc. 6-4, *id.* In January 2013 Cooper filed his own suit, through Godfread, alleging identity theft against Steele, Prenda, and the shell companies. *See* Doc. 6-6, *id.*

---

[1] In this motion, citations to the record will be in the form "Doc. ___, 13-cv-1569" for docket entries in *Duffy v. Godfread*, and "Doc. ___, 13-cv-4341" for docket entries in *Prenda Law, Inc. v. Godfread*. Citations to the record in other cases, if not already filed as exhibits in either of the consolidated cases before the Court, will be in the form "ECF No. ___."

1

In February 2013 Steele, Hansmeier, Duffy and Prenda retaliated against this exercise of the right to petition that exposed their fraud. They colluded in three substantially identical state-court defamation lawsuits against Godfread and Cooper: two actions with Duffy and Prenda as plaintiffs, now removed and consolidated in this Court, and a third action Steele filed in Florida but voluntarily dismissed upon removal. Doc. 5-7, 5-8 & 5-9, 13-cv-4341. They also sought to join Hansmeier's law firm Alpha Law LLC as a plaintiff through a sham "amended complaint." Doc. 39 & 39-1, 13-cv-1569. The Court sanctioned Duffy and Prenda $11,785.20 in attorney's fees for their roles in that sham. Doc. 59 & 68, 13-cv-4341. Neither Duffy nor Prenda has paid the sanctions to date.

Prenda's claimed insolvency clouds Defendants' ability to recover on the sanctions award and, if granted, on any award on their pending counterclaims, which 1) seek a declaratory judgment that these retaliatory lawsuits violate the Minnesota anti-SLAPP statute; and 2) allege civil conspiracy by Duffy and Prenda (by and through its principals Steele, Hansmeier, and Duffy), *see, e.g.,* Doc. 50 ¶¶ 39, 42(a)-(b), 43(a) & 44, 13-cv-1569.

## Legal Standard

"Joint and several liability is a theory of recovery which requires that the plaintiffs, in an action alleging tortious or constitutionally repugnant conduct by multiple actors, establish that each defendant acted in concert to 'produce a single, indivisible injury.'" *Harper v. Albert*, 400 F.3d 1052, 1062-63 (7th Cir. 2005) (*quoting Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985)). "Because the injury is indivisible each tortfeasor is liable for the full harm." *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987); *accord Burlington Northern & Santa Fe Ry. v. United States*, 556 U.S. 599, 614 (2009); Restatement (Second) of Torts § 875. "Joint and several liability is [a] vital instrument for maximizing deterrence." *Paper Sys. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002).

In the Seventh Circuit, "deferential review of a district court's allocation of liability for a fee award among multiple parties is warranted." *Herbst v. Ryan*, 90 F.3d 1300, 1304 (7th Cir. 1996). "[T]he issue of joint and several liability is a factual determination for the district court." *Yang v. Hardin*, 37 F.3d 282, 287 (7th Cir. 1994), *rev'd on other grounds*, 11 Fed. Appx. 620 (7th Cir. 2001).

## Argument

**I.   Steele, Hansmeier and Duffy Should Be Held Jointly and Severally Liable for Prenda's Obligations Because of their Joint, Concerted Role in These Retaliatory Lawsuits.**

Steele, Hansmeier, and Duffy colluded in pursuing these frivolous, retaliatory lawsuits, exacerbated with duplicitous filings. They caused Godfread and Cooper a single, indivisible injury: unwarranted attorney's fees and costs and other damages. They should be held jointly and severally liable for any sanctions, damages, attorney's fees, or other penalties imposed on Prenda here.

**A. Steele, Hansmeier, and Duffy Collaborated in these Retaliatory Lawsuits.**

The record shows that Steele, Hansmeier, and Duffy actively collaborated in perpetrating this string of retaliatory litigation. Duffy is listed as the plaintiff in the first of the retaliatory suits, which he filed in Cook County on February 5, 2013. Doc. 1-1, 13-cv-1569. The second was filed in St. Clair County on February 12, 2013, with Prenda listed as plaintiff. Doc. 1-1, 13-cv-4341.

On February 13, 2013, Steele called Godfread to ask if he and Cooper would accept service in the retaliation suits. Doc. 11-8 p. 2, 13-cv-1569. Godfread declined, as Steele did not disclose the basis of the suits, and the next day Steele emailed Godfread, "you will be finding out what the causes of action are when you are served with the various complaints." *Id.* On February 15, 2013 Steele emailed Godfread to meet and confer about subpoenas that Prenda would be issuing in its St. Clair County suit, mentioning the third lawsuit: "my personal suit against you should be filed in Florida early next week." *Id.* p. 3. That same day, within an hour of Godfread being served the first two complaints, Steele left him a voicemail declaring his knowledge of that service ("I understand that you just got served") and mentioning lawsuits—plural—still to come ("the other suits that are coming your way in the next few days"). Doc. 34 p. 5, 13-cv-1569.

In a February 21, 2013 email, Hansmeier threatened to file a *fourth* lawsuit against Godfread in Minnesota on behalf of his "client" LiveWire Holdings LLC.[2] Doc. 11-8 pp. 3-4, 13-cv-1569. On Friday, February 22, 2013, Steele emailed Godfread again, referencing both the Illinois suits and the two others Steele and Hansmeier had been threatening: "As you know, Mr. Cooper has been served in two separate Illinois suits with additional suits currently being filed." *Id.* p. 4. Steele then threatened Cooper in a voicemail:

---

[2] LiveWire is a shell company that Steele and Hansmeier purport is solely operated by their erstwhile paralegal Mark Lutz. In May 2013, Steele told an interviewer that he and Hansmeier work part-time for LiveWire. Joe Mullin, "'Look, you may hate me': 90 minutes with John Steele, porn troll," *Ars Technica* (May 10, 2013), http://arstechnica.com/tech-policy/2013/05/look-you-may-hate-me-90-minutes-with-john-steele-prenda-porn-troll/. But as this court has recognized, "the complicated business model of Prenda ... is rife with aliases, alter egos, and purported 'clients.'" Doc. 60 p. 2 n.2, 13-cv-4341. In a sworn declaration, former Prenda counsel Brett Gibbs said LiveWire had purchased AF Holdings and hired him as in-house counsel *Ingenuity 13*. ECF No. 50 p. 3; *see also id.* ECF No. 49 p. 2 n.1. *See also* Doc. 50-4 pp. 5-6, 13-cv-1569.

> It's like if you refuse to, you know, return my calls or—or engage in mandatory conference, then **I'm going to have to be forced to ask the judge to, you know, force you to do things and it just gets ugly from there.** So if you decide to get an attorney in either of those matters or in **the other cases which we're filing against you in the upcoming weeks**, please let them—have them give me a call.

Doc. 11-11 pp. 4-5, 13-cv-1569 (emphasis added); *see Ingenuity 13*, ECF No. 79 (notice of lodging).[3] His explanation—that "we" had filed the first two suits and would be filing more—in effect admitted Steele and the others collaborated in all of the suits against Godfread and Cooper (despite his prior claim that he had "no involvement" with several of them, *see* Doc. 11-8 p. 2, 13-cv-1569).

On Monday, February 25, 2013 the third retaliatory suit was filed in a Florida state court in Miami, listing Steele as the plaintiff. On Wednesday, February 27, 2013 Steele called Cooper threatening to seek defaults against him and threatening the fourth lawsuit (which was never filed):

> **I know you've been served with a third lawsuit. And there are more coming. Don't worry about that.** Well, obviously, if I don't hear from you, I'm going to start filing for certain default motions and start getting relief that way. I can assure you that just ignoring legal matters, it's not going to go away. I can guarantee you, I'm not going away.

Doc. 11-11 pp. 5-6, 13-cv-1569 (emphasis added); *see Ingenuity 13*, ECF No. 79 (notice of lodging).

While Steele knew that Godfread and Cooper had both been served the St. Clair County complaint, on February 21, 2013 Prenda filed a sham "amended complaint" that included a new plaintiff, Alpha Law Firm, without seeking or obtaining leave to amend. Doc. 60 pp. 1-5, 13-cv-1569. *See also id.* p. 7 ("The purported Amended Complaint merely added Alpha Law, a Minnesota corporation, as a plaintiff to the case, in an attempt to destroy diversity…").

In publicly filed documents, Steele Hansmeier PLLC listed Hansmeier as its manager and its registered office address at Alpha Law Firm. *See* 60-3 p. 9, 13-cv-1569; *see also id.* at 8 (calling "the Prenda/Alpha distinction illusory at best, fraudulent at worst"). Hansmeier was "the sole manager of Alpha." *Guava, LLC v. Merkel*, No. A13-2064, 2014 Minn. App. Unpub. LEXIS 829, *28 (Minn. Ct. App. August 4, 2014); *see also id.* **4-5.

### B. Steele, Hansmeier, and Duffy's Roles in These Cases Support Joint and Several Liability.

Joint and several liability is proper where multiple tortfeasors' mutually reinforcing acts cause injury, "as for example where one tortfeasor places a bucket under the plaintiff's chair, another

---

[3] In this motion, citations to the record in *Ingenuity 13, LLC v. Doe*, No. 12-cv-8333-ODW (C.D. Cal.) will be in the form "*Ingenuity 13,* ECF No. ___."

4

fills it with gasoline, and a third drops a match into it, causing it to explode and injure the plaintiff." *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987). Steele, Hansmeier, and Duffy qualify for such treatment because of their tandem work propagating these parallel, coordinated lawsuits.

Each of them acted on Prenda's behalf in the conduct that this Court has already sanctioned. Duffy, appearing as Prenda's counsel, personally made a string of false representations to the Court. Steele acted as Prenda's counsel in the St. Clair County case, pursuing service to and discovery from both Godfread and Cooper, and told both Godfread and Cooper he knew they had been served, *before* Prenda's local counsel falsely told the St. Clair County clerk that no one had been served. Hansmeier served up his law firm as a nominal plaintiff, hoping to defeat diversity and avoid this Court's scrutiny. They should all be held jointly and severally liable for the sanctions already imposed.

Joint and several liability should also be imposed on Steele, Hansmeier, and Duffy for any award that may be granted Godfread and Cooper on their conspiracy and anti-SLAPP counterclaims. Both counterclaims address intentional wrongs, and in Illinois the rule for intentional torts is joint and several liability, not apportionment. *Hills v. Brigeview Little League Ass'n*, 306 Ill. App. 3d 13, 20-21 (Ill. App. Ct. 1999), *rev'd on other grounds*, 195 Ill. 2d 210 (Ill. 2000). Joint and several liability is the rule on a conspiracy claim, "under which each member of a conspiracy is liable for all damages caused by the conspiracy's entire output." *Paper Sys. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002). Liability would also be joint and several for any attorney's fees awarded under their anti-SLAPP counterclaim. "When two or more defendants actively participate in a constitutional violation, they can be held jointly and severally responsible for indivisible attorneys' fees." *Molnar v. Booth*, 229 F.3d 593, 605 (7th Cir. 2000). The counterclaim for violating the Minnesota anti-SLAPP statute raises a core constitutional violation: retaliatory actions taken against Godfread and Cooper for exercising the First Amendment right to petition the courts. "Minnesota's anti-SLAPP statute seeks to vindicate the important constitutional right to publicly participate in government." *Nexus v. Swift*, 785 N.W. 771, 779-80 (Min. App. Ct. 2010); *accord Middle-Snake-Tamarac Watershed v. Stengrim*, 784 N.W. 2d 834, 839 (Minn. 2010).

**II.    Steele, Hansmeier and Duffy Should Be Held Jointly and Severally Liable for Prenda's Obligations Because of their Preclusively Determined Control of Prenda.**

Steele, Hansmeier, and Duffy's active involvement in each prong of these multiple-lawsuit proceedings is evidenced both in the case dockets, and in their extensive history of surreptitiously

5

using Prenda and other shell companies to disguise their actual roles in litigation. That track record has been conclusively established in two cases sanctioning Steele, Hansmeier, and Duffy: *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333-ODW, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013) (sanctions under the court's inherent authority) (*available at* Doc. 50-3, 13-cv-1569) and *Lightspeed Media Corp. v. Smith*, No. 12-cv-00889-GPM, 2013 U.S. Dist. LEXIS 168615 (S.D. Ill. Nov. 27, 2013) (imposing 28 U.S.C. § 1927 sanctions) (*available at* Doc. 54-3, 13-cv-4341), *aff'd*, No. 13-3801, 2014 U.S. App. LEXIS 14725 (7th Cir. July 31, 2014); Doc. 60-3, 13-cv-1569.

Steele, Hansmeier, and Duffy each claimed their roles in litigating *Lightspeed* were limited to certain "discrete actions," namely their documented filings and court appearances. Doc. 54-3 pp. 3-4, 13-cv-4341. The *Lightspeed* court, to the contrary, had no doubt that they were "closely associated and acted in concert to file and prosecute this frivolous lawsuit," and found "that these men acted in concert throughout the entirety of the proceedings in this matter, share total responsibility for their actions, and are jointly and severally liable for the fees and costs of Defendants." *Id.* at 7, 13. The Seventh Circuit affirmed. Doc. 60-3 p. 19, 13-cv-1569 (Steele and Hansmeier were "involved in the shadows" even when they denied active roles). Likewise the *Ingenuity 13* court, finding Prenda was "owned and controlled by the Principals" (Steele, Hansmeier, and Duffy), sanctioned them for their out-of-court role in fraud their local counsel conducted at their instance. Doc. 50-3 p. 4, 13-cv-1569.

This Court should apply issue preclusion to facts determined on the record in *Ingenuity 13* and *Lightspeed* establishing that Steele, Hansmeier, and Duffy own and control Prenda, act in concert in directing its litigation, and can be held jointly and severally liable for attorney's fees that Prenda defendants incur as a result. Each of them were personally sanctioned in those cases after extensive litigation, and each has been deeply involved in these consolidated cases; Duffy appeared as both plaintiff and attorney, while Steele and Hansmeier act "in the shadows" through the proxy plaintiff of Prenda, which, as the *Ingenuity 13* court found, the trio own and control. "[A] party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Taylor v. Sturgell*, 553 U.S. 880, 895 (2006).

### A. Legal Standard for Issue Preclusion/Collateral Estoppel.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2006). "Issue preclusion … bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior

6

judgment,' even if the issue recurs in the context of a different claim." *Id.* at 892 (*quoting New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). "Collateral estoppel (also called 'issue preclusion') refers to the simple principle that 'later courts should honor the first actual decision of a matter that has been actually litigated.'" *Chicago Truck Drivers, Helpers & Warehouse Union (Independent) Pension Fund v. Century Motor Freight*, 125 F.3d 526, 530 (7th Cir. 1997) (*quoting* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4416, at 136 (1981 & Supp. 1997)). "It ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Id.* (*quoting Montana v. United States*, 440 U.S. 147, 153 (1979)). Trial courts have broad discretion to determine when offensive collateral estoppel applies. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

"Issue preclusion has the following elements: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (*citing Matrix IV, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011)).

### B. *Ingenuity 13, LLC v. Doe*, No. 12-cv-8333-ODW (C.D. Cal. 2012).

#### 1. Litigation History of *Ingenuity 13*.

In *Ingenuity 13* Brett Gibbs ("Gibbs"), then of counsel to Prenda, filed suit and sought leave to subpoena an Internet service provider to identify the John Doe defendant. This was part of Prenda Law's "modus operandi." *See* Doc. 60-3 p. 3, 13-cv-1569 (*citing AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 993 (D.C. Cir. 2014)). On December 3, 2013, four days after Godfread's letter to the Minnesota courts became publicly available through PACER, the *Ingenuity 13* Doe defendant moved to stay discovery in light of Prenda and Steele's apparent role in forging and filing, in multiple courts, documents that named Cooper (without his knowledge) as the principal of Prenda's shell company plaintiffs AF Holdings and Ingenuity 13. *Ingenuity 13*, ECF No. 15. The Doe defendant submitted Godfread's November 29, 2012 letter to the Minnesota courts and Cooper's December 3, 2012 sworn affidavit denying any role in AF Holdings, Ingenuity 13, and Prenda's litigation, and raising the issue that Steele had misappropriated Cooper's name and forged documents using Cooper's signature.

*Ingenuity 13*, ECF No. 15-1 & 19-1. The Doe defendant moved for extensive discovery about Prenda's misappropriation of Cooper's identity. *Id.*, ECF No. 23. Gibbs noticed voluntary dismissal of *Ingenuity 13*, and several related cases, in late January 2013. *Id.*, ECF No. 43.

Gibbs was ordered to show cause why he should not be sanctioned. Doc. 6-5, 13-cv-1569. In response Gibbs distanced himself from Prenda and its fraud. He filed sworn declarations that he had no knowledge of the misappropriation, and that his work had been directed by Steele and Hansmeier, both when they retained him to work of counsel for Steele Hansmeier PLLC and after that firm transferred its cases to Prenda, which was simply Steele Hansmeier's successor. *Ingenuity 13*, ECF No. 50 & 58; *see also id.*, ECF No. 61 (Gibbs' March 4, 2013 declaration that his relationship with Prenda had ended); *id.*, ECF No. 240-2, ¶¶ 12-13 ("I accepted Hansmeier's offer to work at Steele Hansmeier … I worked at Steele Hansmeier PLLC and its successor, Prenda Law, Inc., from late March 2011 until late February 2013."). He testified to the same facts in court. Doc. 11-2 pp. 60-61, 13-cv-1569 (show-cause hearing transcript).

In a related case, Hansmeier testified as AF Holdings' corporate Rule 30(b)(6) deponent, reporting that Steele claimed to have actually obtained Cooper's signature and assured that it was not a forgery. Doc. 11-1 pp. 121-26, 13-cv-1569 (Hansmeier deposition transcript, *AF Holdings, LLC v. Navasca*, No. 3:12-cv-02396 (N.D. Cal. Feb. 19, 2013)). The *Ingenuity 13* court reviewed the *Navasca* deposition transcript with interest, calling it "perhaps the most informative thing I have read on this litigation so far." Doc. 11-2 p. 5, 13-cv-1569. But it found that Cooper's signature, as proffered by Prenda in court filings, was not genuine.

The *Ingenuity 13* court ordered Cooper, Gibbs, Steele, Hansmeier, and Duffy to appear at a March 11, 2013 show cause hearing. *Ingenuity 13* ECF No. 66. Cooper testified that his name and signature had been forged and that he had no role in Prenda's litigation or the two offshore companies Prenda held him out as running in forged court filings. Doc. 11-2 pp. 21-37, 13-cv-1569. The *Ingenuity* court credited Cooper's testimony. *Id.* p. 95 ("It is not [still] an open question. We have had the individual testify under oath. Those were not his signatures on the documents."). Gibbs, at the March 11 show-cause hearing, testified that he continued to be supervised by Steele and Hansmeier after Prenda took over the business, and acted upon their instructions as to which cases to file and settle, Doc. 11-2 pp. 73-79, 13-cv-1569; that Steele handled the process of hiring local counsel for Prenda, *id.* p. 112; that his court filings claiming to have Cooper's original, notarized

8

signature on file were based solely on Hansmeier and Steele's representations to him, *id.* pp. 96-97; and that he felt he had "been duped by Hansmeier and Steele," *id.* p. 97.

Steele, Hansmeier, and Duffy did not attend the March 11 show-cause hearing. Their counsel showed up without them. *See id.* pp. 5-7 & 93-94. The court concluded

> that all of these lawsuits are being prosecuted on behalf of the lawyers, that all of the settlement funds inure solely to the benefit of the lawyers because not dime one has been transmitted to AF Holdings or to Ingenuity 13. Now, if there is information to rebut that, I would love to hear it. But, otherwise, that is what I am stuck with.

*Id.* p. 17. They contended that they were not subject to personal jurisdiction. *Id.*, ECF No. 82. Steele submitted a declaration swearing that he was only "of counsel with the law firm Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Id.*, ECF No. 83. But the court ordered them to appear at a second show-cause hearing, concluding, "there is at least specific jurisdiction over [Steele, Hansmeier and Duffy] because of their pecuniary interest and active, albeit clandestine participation in these cases." *Id.*, ECF No. 86 p. 1; *see also id.*, ECF No. 48 & 88.

Steele, Hansmeier, and Duffy appeared at the second *Ingenuity 13* show-cause hearing and invoked the Fifth Amendment, refusing to testify. Doc. 51-4 at 8:8-10 & 10:10-20, 13-cv-4341. The court weighed the testimony already received and drew reasonable adverse inferences against them because they declined to participate in either evidentiary hearing on sanctions. *See id.* at 9:8-9 & 10:2-6. As the Seventh Circuit later noted,

> Steele, and Hansmeier each took the Fifth instead of answering the court's questions about attorney misconduct and the relationship between Prenda and other potential shell companies. *See Ingenuity 13 LLC*, 2013 U.S. Dist. LEXIS 64564, 2013 WL 1898633, at *2 n.3. … The Fifth Amendment, however, "does not prevent adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976); *see also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995).

Doc. 60-3 p. 8, 13-cv-1569. Duffy, Hansmeier, and Steele each later argued such inferences were improper, *see Ingenuity 13,* ECF No. 108, 109 & 110, but the court disagreed. They each filed objections to evidence filed on the docket. *Id.*, ECF No. 126, 127 & 128. But none of them have denied the truth of any of Cooper's testimony in any filing with the district court in *Ingenuity 13*. *See id.,* ECF No. 117 p. 6.

Based on the evidence on the record, the *Ingenuity 13* court made a series of findings of fact in a blistering sanctions order, including:

1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright-infringement claim for about $4,000.

4. This nationwide strategy was highly successful because of statutory-copyright damages, the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13. No taxes have been paid on this income.

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper ... The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

*Ingenuity 13*, ECF No. 130 pp. 3-5 (available at Doc. 50-3, 13-cv-1569).

The court ordered Steele, Hansmeier, Duffy, Gibbs, AF Holdings, Ingenuity 13, and Prenda to pay $81,319.72 as sanctions, jointly and severally. *Id*. p. 10. Steele, Hansmeier, and Duffy filed a series of motions to vacate, reconsider, or stay the sanctions orders. *Id.*, ECF Nos. 140, 157-1, 170, 180, 197, 201-205, 212, 216. The motions were denied. *Id.*, ECF Nos. 150, 164, 177, 189, 199, 210, 214, 220, 224. The sanctioned parties, other than Gibbs, have fully briefed an appeal to the Ninth

10

Circuit. *See* Reply Brief for Appellants, *Ingenuity 13, LLC v. John Doe*, Nos. 13-55859 et al. (9th Cir. filed Apr. 28, 2014).

### 2. Issue Preclusion Applies to the *Ingenuity 13* Determinations that Steele, Hansmeier and Duffy Owned and Controlled Prenda and Stole Cooper's Identity.

Steele, Hansmeier and Duffy should be precluded from denying the facts of their ownership and control of Prenda, and their theft of Cooper's identity. Those facts were squarely at issue and actually litigated in the *Ingenuity 13* show-cause proceedings, to which they were all parties. They had a full opportunity to litigate, and actually did litigate; "even when a party invokes his Fifth Amendment privilege in the prior suit, the 'actually litigated' requirement for purposes of collateral estoppel may nevertheless be satisfied." *In re Abetya*, 387 B.R. 846, 853 (Bankr. D.N.M. 2008). *Digital Sys. Eng'g v. Moreno*, 414 B.R. 485, 490 (Bankr. D.Wis. 2009).

Determining the facts about Prenda's ownership and control was essential to the *Ingenuity 13* sanctions order. At first, only Gibbs was made subject to the court's show-cause orders. *See* Doc. 6-5, 13-cv-1569. But as more evidence came to light, the court found Steele, Hansmeier, and Duffy culpable, and therefore sanctionable, for "their behind the scenes role in the conduct facially perpetrated by Gibbs." Doc. 50-3 p. 3, 13-cv-1569. *See also id.* p. 2 ("Gibbs' behavior in the porno-trolling collective was controlled by several attorneys …"). As determined in *Navasca*,

> Judge Wright specifically ordered Steele and Hansmeier to appear and testify because Gibbs represented that these individuals had controlled his litigation activities, and Judge Wright wanted to determine whether they were "culpable" for Gibbs' conduct. … Wright's sanctions order was based on his finding that Hansmeier and Steele were culpable, and thus the nature of their control over Gibbs' action was necessary to his award of sanctions.

Doc. 50-4 pp. 11-12, 13-cv-1569.[4] Their culpable role in giving Gibbs his marching orders was also necessary to the *Ingenuity 13* court's later decision to absolve him from sanctions liability. The facts of the misappropriation of Cooper's identity were not only essential to the sanctions order; they served as an animating cause of the sanctions proceedings, inspiring the court's vigilance. "It was when the Court realized Plaintiffs engaged their cloak of shell companies and fraud that the Court went to battlestations." Doc. 50-3 p. 2, 13-cv-1569. "Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court." *Id.* p. 3.

---

[4] The *Navasca* court found that the *Ingenuity 13* sanctions order merits preclusive weight on related issues: "Issue preclusion bars AF, Steele, and Hansmeier from relitigating the findings of fact Judge Wright made in *Ingenuity 13* regarding their alter ego relationship, their conduct, and their business model." Doc. 50-4 p. 10, 13-cv-1569.

11

The voluminous *Ingenuity 13* docket evidences the full representation of Steele, Hansmeier, and Duffy, who fully and heavily litigated these and a multitude of other issues, both through other counsel and *pro se*. Their choice to not attend the first show-cause hearing, and to invoke the Fifth Amendment at the second, cannot prevent a finding that they were fully represented. An opportunity to appeal supports a finding of full representation, *see Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) and *Adams v. Adams*, 738 F.3d 861, 867 (7th Cir. 2013), and they are appealing the *Ingenuity 13* sanctions to the Ninth Circuit. A "final judgment by a district court has preclusive effect even though the judgment is pending on appeal." *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 160 (7th Cir. 1995); *accord Gray*, 885 F.2d at 406; Restatement (Second) of Judgments § 13(g) (1982) ("[T]he wisest course … is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting a final judgment."). The elements of issue preclusion fully support its application to all factual determinations contested in *Ingenuity 13* that are also at issue in this Court.

### C. *Lightspeed Media Corp. v. Smith*, No. 12-cv-00889-GPM (S.D. Ill. 2012).

#### 1. Litigation History of *Lightspeed.*

Steele, Hansmeier, and Duffy were sanctioned in *Lightspeed* under 28 U.S.C. § 1927. Doc. 54-3, 13-cv-4341. Steele and Hansmeier contested the sanctions in part on due process grounds; they had withdrawn from the action before the first motion for sanctions was filed and claimed not to have received notice, though Duffy received service electronically. *Id.* pp. 4-5. The district court found that service on Duffy gave sufficient notice to Steele and Hansmeier.

> Duffy, Steele, and Hansmeier are all associated with the same law firm: Prenda Law, Inc. The docket sheet indicates Paul Duffy's firm is Prenda Law; Steele listed his firm as Prenda Law on his entry of appearance and his motion to withdraw (Docs. 20, 57); and Hansmeier indicated that he was "of counsel" to Prenda Law, Inc. (Doc. 50).

*Id.* p. 6 (further recounting "other evidence suggesting these three men worked in concert with one another"). *See also id*. p. 7-8 ("the Court has no doubt that Duffy, Steele, and Hansmeier are closely associated and acted in concert to file and prosecute this frivolous lawsuit").

> The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied disregard for the orderly process of justice." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006), *quoting Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir. 1994). These men have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts, and being referred to state and federal bars, the United States Attorney in at least two districts, one state Attorney General, and the Internal Revenue Service. For example, at the November 13 hearing, Hansmeier skirted the Court's direct questions, Steele made

>feigned protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of documentary evidence on the record in this case, and their sworn declarations in other cases.

*Id.* pp. 10-11 (footnotes, collecting cases, omitted).

The *Lightspeed* district court imposed joint and several liability on Steele, Hansmeier and Duffy for all of the defendants' attorney's fees, totaling $261,025.11. "The Court finds, that these men acted in concert throughout the entirety of the proceedings in this matter, share total responsibility for their actions, and are jointly and severally liable for the fees and costs of Defendants." *Id.* pp. 12-13. The Seventh Circuit affirmed the finding of joint and several liability, noting evidence supported that finding:

>The relevant question thus relates to the scope of responsibility undertaken by each individual attorney. In our case, the district court found that while Steele and Hansmeier were not listed on every court document, the evidence showed that they were "in cahoots" with Duffy and worked with him to use the judicial system for a legally meritless claim. … While Steele and Hansmeier insist that they had only minimal activity with this case, the district court did not abuse its discretion when it found otherwise.

Doc. 60-3 p. 19, 13-cv-1569. The Seventh Circuit found further evidentiary support in public filings in which Steele Hansmeier and Prenda list their Chicago mailing addresses as the same, and the Minnesota registered address for Steele Hansmeier is listed at Alpha Law Firm. *Id.* p. 9; *id.* p. 8 ("the district court had ample reason to find the Prenda/Alpha distinction illusory at best, fraudulent at worst"). *See also Lightspeed*, No. 14-1682, ECF No. 28-17 (finances showing joint control).

### 2. Issue Preclusion Applies to the *Lightspeed* Court's Determinations that Steele, Hansmeier, and Duffy's Concerted Litigation Supports Joint and Several Liability.

This Court should apply issue preclusion to the *Lightspeed* determinations that Steele, Hansmeier, and Duffy act in concert in Prenda's abusive litigation, and that those acts support joint and several liability for attorney's fees and costs imposed by their wrongful actions. Each had an opportunity to appeal the sanctions order making those determinations, and they did so. Their joint appeal was roundly denied by the Seventh Circuit, which memorably reminded them: "The first rule of holes, according to an old saying, is to stop digging." Doc. 60-3 p. 2, 13-cv-1569. These three attorneys actually litigated the issue of their concerted action through Prenda.[5] Despite their

---

[5] The same issue was also addressed in *Ingenuity 13*. For example, denying Steele's motion for reconsideration, the *Ingenuity 13* court noted that Steele, Hansmeier, Duffy, Prenda, and others "continue to act in concert" and "have a history of conspiring together—there is nothing to suggest that they have stopped." *Ingenuity 13*, ECF No. 224 pp. 4 & 5.

13

strenuous denials, the *Lightspeed* court found that they acted in such concert that service of motions on Duffy sufficed to reach all three, even after Steele and Hansmeier noticed withdrawal from the case. Finding due process satisfied was necessary for the imposition of sanctions on each, jointly and severally. All three were adequately represented, arguing their own cases and failing on the merits. Indeed, the district court found that hearing Steele and Hansmeier's motions for reconsideration cured any due process violation they could claim, Doc. 54-3 p. 8, 13-cv-4341, and the Seventh Circuit specifically affirmed on that point. Doc. 60-3 p. 7, 13-cv-1569.

The three attorneys also extensively litigated the issue of whether they had misrepresented their relationship with Prenda. The *Lightspeed* court found that they had: "Hansmeier skirted the Court's direct questions, Steele made feigned protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of documentary evidence on the record in this case, and their sworn declarations in other cases." Doc. 54-3 pp. 10-11, 13-cv-4341. This was necessary to his finding that they exhibited such a "serious and studied disregard for the orderly process of justice" that Section 1927 sanctions were warranted. *Id.* p. 10. Moreover, these three attorneys control Prenda Law and direct its litigation, as conclusively determined in *Ingenuity 13*, so in each Prenda case they have "had a sufficient 'laboring oar' in the conduct of the … litigation to actuate principles of estoppel." *Montana*, 440 U.S. at 157. They are precluded from relitigating any of these issues here. The elements of issue preclusion fully support its application to all factual determinations contested in *Lightspeed* that are also at issue in this Court.

**D. Applying Issue Preclusion Would Not Be Unfair to Steele, Hansmeier, and Duffy.**

As the Seventh Circuit noted, the Supreme Court has cautioned that

> offensive use of collateral estoppel may be "unfair to a defendant," to the extent that: (1) the defendant may have been sued in the first action for "small or nominal damages" for which "he may have [had] little incentive to defend vigorously"; (2) the "judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant"; or (3) "the second action affords the defendant procedural opportunities [e.g., discovery procedures] unavailable in the first action that could readily cause a different result."

*Chicago Truck Drivers, Helpers & Warehouse Union (Independent) Pension Fund v. Century Motor Freight*, 125 F.3d 526, 531 (7th Cir. 1997) (*quoting Parklane Hosiery*, 439 U.S. at 330-31).[6] None of

---

[6] The Supreme Court also cautioned against offensive non-mutual collateral estoppel where it may encourage plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane Hosiery*, 439 U.S. at 330; *Century Motor Freight*, 125 F.3d at 531. That caution does not apply here, as Godfread and Cooper did not await a favorable judgment before seeking to clear Cooper's name. Rather, they filed notices in several courts and ultimately, a suit of their own in Minnesota, and were sued in these cases for doing so.

14

those circumstances would make application of issue preclusion unfair in this case. Steele, Hansmeier, and Duffy are not victimized defendants here but the causes of these frivolous, strategic lawsuits against public participation. They had every incentive to defend against sanctions in both *Ingenuity 13* and *Lightspeed*, and did so vigorously in the district courts and on appeal.

In all pertinent respects, the sanctions orders are consistent both with each other, and with a growing list of other cases. In *Lightspeed*, both the district court and the Seventh Circuit cited and liberally quoted *Ingenuity 13*'s factual determinations about Steele, Hansmeier, Duffy, and Prenda. Doc. 54-3 pp. 7 & 10, 13-cv-4341; Doc. 60-3 pp. 5, 8, 13-cv-1569. Other courts have done the same. See *AF Holdings, LLC* v. *Does 1-1,058*, 752 F.3d 990, 992-93 (D.C. Cir. 2014); *accord* Doc. 51-7 p. 6 n.2, 13-cv-4341 (Order sanctioning Alpha, its attorney, and shell company Guava LLC for bad faith litigation in case involving Prenda, Duffy, and Hansmeier) ("This action appears to be markedly similar to a fraudulent scheme as found [in *Ingenuity 13*]."). The prior sanctions orders are also consistent with this Court's own opinion and order issuing sanctions against Duffy and Prenda, which quoted the *Lightspeed* district court on the relationship between "Prenda, Duffy, and his affiliates," and their frequently sanctioned lies about that relationship. Doc. 60 p. 1 nn.1-2, 13-cv-4341.

The prior actions afforded Steele, Hansmeier, and Duffy ample opportunity for discovery pertinent to the issues subject to preclusion. Since the preclusive issues are their own concerted and fraudulent actions, they have no need to seek discovery from others; the answers lie within. Applying issue preclusion would not be unfair to Steele, Hansmeier, Duffy, or Prenda. Instead it would promote judicial efficiency and help resolve these frivolous cases. *See DeGuelle v. Camilli*, 724 F.3d 933, 934 (7th Cir. 2014).

## Conclusion

Based on their direct roles in the sanctionable acts and overall litigation, as well as the propriety of giving preclusive effect to factual findings in *Ingenuity 13* and *Lightspeed*, joint and several liability for Prenda's actions in these consolidated cases should be imposed upon Steele, Hansmeier, and Duffy.

Dated: October 30, 2014                            Respectfully submitted,

/s/ Jason E. Sweet
Booth Sweet, LLP
32R Essex Street
Cambridge, MA 02139

        T: (617) 250-8619
        F: (617) 250-8883
        jsweet@boothsweet.com
        BBO # 668596

        /s/ Erin K. Russell
        The Russell Firm
        233 South Wacker Drive, 84th Floor
        Chicago, IL 60607
        T: (312) 994-2424
        F: (312) 706-9766
        erin@russellfirmchicago.com
        ARDC # 6287255

        Counsel for Defendants Paul Godfread and Alan Cooper

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 30, 2014, he caused the foregoing to be filed with the Court via its CM/ECF electronic filing system, thereby serving a copy on all parties of record.

        /s/ Jason E. Sweet